# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00067-CV

**Mike Geeslin, Commissioner of Insurance, and Texas Department of Insurance, Appellants**

**v.**

**State Farm Lloyds, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. GN303793, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

This appeal concerns the validity of a rate order issued by the commissioner of insurance. The rate order was based on now-expired article 5.26-1 of the insurance code, which provided the procedure by which Texas homeowners insurance providers were to file their initial homeowners insurance rates with the Texas Department of Insurance ("TDI" or the "department") as required by Senate Bill 14 in 2003.[1] Tex. Ins. Code Ann. art. 5.26-1 (West Supp. 2004-2005). The rate order required State Farm Lloyds to reduce its filed homeowners insurance rates by twelve percent. State Farm Lloyds sought review in district court. Finding that article 5.26-1 was unconstitutional and that State Farm Lloyds's due process rights had been violated, the district court vacated the rate order. Appellants now seek reversal of the district court's judgment. We conclude

---

[1] We substitute Mike Geeslin, in his official capacity, as successor to Jose Montemayor, Commissioner of Insurance. *See* Tex. R. App. P. 7. Because their interests do not diverge, we refer to appellants collectively, but, when necessary in recounting historical facts, we distinguish between the actions of the commissioner and TDI.

that the portion of section 4 of article 5.26-1 setting out what insurers are required to prove on appeal to the commissioner ("the proof provision") is unconstitutional on its face and as applied to State Farm Lloyds. Therefore, we affirm the judgment of the trial court in part as to its findings that the provision of former Article 5.26-1, section 4, which requires an insurer to prove that a rate reduction would produce inadequate rates, is unconstitutional and that State Farm Lloyds's due process rights were violated. Because we further hold that the unconstitutional proof provision is severable, we sever that provision, reverse the trial court's judgment as to the constitutionality of the remainder of the statute, and remand to the department for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

From 1991 through 2003, Texas insurance companies operated under a system of flexible rate setting, which allowed insurers to charge up to 30 percent more or less than a state-promulgated benchmark rate. House Research Organization, Bill Analysis, Tex. S.B. 14, 78th Leg., R.S. (2003). During that time period, in an effort to avoid regulation, insurance companies began shifting more and more of their business toward unregulated branches called Lloyd's companies. *Id.* Originally unregulated because they generally covered specialty risks at lower-than-standard rates, Lloyd's companies grew from about 20 percent of the market in 1991 to about 95 percent of the market in 2003. *Id.* Thus, by 2003, only five percent of the Texas homeowners insurance market was regulated. *Id.*; House Comm. Report, Tex. S.B. 14, 78th Leg., R.S. (2003). In this mostly unregulated market, Texas consumers were paying the highest premiums in the country, often for policies providing reduced coverage. *Id.*

2

To address these issues, the Texas Legislature passed Senate Bill 14, which amended the insurance code to establish a new system for regulating residential property insurance rates. Act of June 2, 2003, 78th Leg., R.S., ch. 206, 2003 Tex. Gen. Laws 907. Under the new system, insurers were required to file their rates with TDI, and TDI would then review and either approve or disapprove those rates.

The changes to the system of insurance regulation were implemented in three phases. Article 5.26-1, effective June 11, 2003, through September 1, 2004, established a one-time procedure for quickly bringing all Texas homeowners insurance providers under this new rate-regulation program. According to its terms, insurers were required to file their initial regulated rates with TDI within twenty days of the effective date of SB 14, June 11, 2003, and to implement the rates immediately. Tex. Ins. Code Ann. art. 5.26-1, § 2(a). Within forty days of the filing deadline, TDI was required to review and either approve or modify the initial rates. *Id.* art. 5.26-1, § 2(b).

After the initial filing, article 5.142, effective June 11, 2003, through December 1, 2004, provided temporary rate-regulation procedures. *Id.* art. 5.142 (West Supp. 2004-2005). Under the terms of article 5.142, insurers were required to file their rates with TDI and await the commissioner's approval before implementing these rates. *Id.* art. 5.142, § 5.

Finally, after December 1, 2004, article 5.13-2 allowed insurers to file rates and implement the rates immediately without prior approval. *Id.* art. 5.13-2, § 5 (West Supp. 2005). Under this permanent file-and-use system, insurers can use proposed rates immediately, but TDI can review and either disapprove the rates before they go into effect or disapprove further use of the filed rates after they go into effect. *Id.* art. 5.13-2, §§ 5, 7.

State Farm Lloyds filed with TDI on June 26, 2003, submitting its then-existing rates as its initial rates. On August 18, 2003, TDI notified State Farm Lloyds of its determination that the

3

rates must be reduced by twelve percent, stating that the rates "are not reasonable for the risks to which they apply." State Farm Lloyds appealed.

Pursuant to the terms of article 5.26-1, a hearing on State Farm's appeal was to be conducted before the commissioner. TDI noticed the case for hearing fifteen days from the date that State Farms Lloyds filed its appeal. In preparation for the hearing, State Farm Lloyds served discovery requests on TDI, including deposition notices, requests for documents, and interrogatories, seeking to determine how TDI had set the rate reduction for State Farm Lloyds. Although State Farm Lloyds's discovery requests were served pursuant to the department's rules of practice and procedure for contested cases, TDI refused to produce for deposition any of its employees with knowledge of relevant facts about TDI's rate reduction, denied all of State Farm Lloyds's requests for documents and interrogatories, and withheld the workpapers and exhibits of its testifying expert until after State Farm Lloyds prefiled its direct case, arguing that the case was a rate case, not a contested case, and, therefore, the contested case discovery rules did not apply. *See* 28 Tex. Admin. Code §§ 1.82-.84 (2003). After a pretrial hearing on August 25, 2003, TDI agreed to present one of its two designated testifying experts for a limited, one-and-a-half-hour deposition.

The commissioner heard the merits of the case on September 2 and 3, 2003. To prevail in its appeal under the terms of article 5.26-1, State Farm Lloyds was required to show by clear and convincing evidence that the rate reduction specified by TDI would produce inadequate rates. An inadequate rate was defined as a rate that is "insufficient to sustain projected losses and expenses" and "endangers the solvency of an insurer using the rate." Tex. Ins. Code Ann. art. 5.142, § 2(b)(2); *see also id.* art. 5.26-1, § 1(b) ("The definitions adopted under article 5.142 of this code apply to this article."). Following the hearing, the commissioner issued a final order affirming

4

the department's rate reduction, stating in a single conclusion of law that the rates recommended by TDI would produce adequate base rates for State Farm Lloyds.

State Farm Lloyds sought judicial review in district court. The district court granted summary judgment in favor of State Farm Lloyds, declaring appellants' actions void and unenforceable, vacating the commissioner's rate order, and denying appellants' request to remand the case for further administrative proceedings. According to the district court, article 5.26-1 was unconstitutional on its face and as applied, violating the due course of law provision of the Texas Constitution and the due process clause of the United States Constitution. Article 5.26-1 was also unconstitutional, the court found, because it violated the takings provisions of both the Texas Constitution and the United States Constitution. Further, the court found that appellants had denied State Farm Lloyds due process by failing to follow the applicable contested case provisions of the Administrative Procedure Act ("APA") and TDI's own contested case rules. *See* Tex. Gov't Code Ann. §§ 2001.051-.178 (West 2000); 28 Tex. Admin. Code §§ 1.1-.90 (2003). The commissioner and TDI appealed to this Court.

**ANALYSIS**

*Standard of Review*

The material facts are not in dispute, and the propriety of summary judgment is a question of law. *Westcott Commc'ns, Inc. v. Strayhorn*, 104 S.W.3d 141, 145 (Tex. App.—Austin 2003, pet. denied). We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When the material facts are not in dispute, both parties move for summary judgment, and the district court grants one motion and denies the other,

5

we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment that the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

### *Constitutionality of Article 5.26-1*

When the constitutionality of a statute is challenged, we begin our review with a presumption of validity, *Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex. 1983), and the burden is on the party attacking the statute to establish its unconstitutionality. *Texas Pub. Bldg. Auth. v. Mattox*, 686 S.W.2d 924, 927 (Tex. 1985); *Robinson v. Hill*, 507 S.W.2d 521, 524 (Tex. 1974). In construing a statute, we presume that:

(1)  compliance with the constitutions of this state and the United States is intended;

(2)  the entire statute is intended to be effective;

(3)  a just and reasonable result is intended;

(4)  a result feasible of execution is intended;  and

(5)  public interest is favored over any private interest.

Tex. Gov't Code Ann. § 311.021 (West 2005).  When confronted with multiple constructions of a statute, if possible, we must interpret the statutory language in a manner that renders it constitutional. *City of Houston v. Clark*, 197 S.W.3d 314, 320 (Tex. 2006).  In determining legislative intent, as we must, we presume that the legislature intended compliance with the constitution; therefore, statutes

6

are given a construction consistent with constitutional requirements. *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 715 (Tex. 1990). We look to the plain meaning of the words used in the statute, presuming every word to have been deliberately chosen and excluded words to have been purposely omitted. *Fireman's Fund County Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 768-69 (Tex. 2000); *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 398 (Tex. 2000); *USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied). We should not adopt a construction of a statute that will render the statute meaningless or lead to absurd results. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999).

In challenging the constitutionality of a statute, a party may show that the statute is unconstitutional on its face or as applied to that party. *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n.16 (Tex. 1995); *see also City of Corpus Christi v. Public Util. Comm'n of Tex.*, 51 S.W.3d 231, 240-41 (Tex. 2001) (Owen, J., concurring). To sustain a facial challenge, the party must show that the statute, by its terms, always operates unconstitutionally. *Id.* To sustain an as-applied challenge, the party must show that the statute is unconstitutional when applied to that particular person or set of facts. *Id.*

### 1. The provision of article 5.26-1 that sets out the proof requirement for rate reviews is unconstitutional on its face.

Appellants contend that, when considering the insurance code as a whole, article 5.26-1 can be construed to operate constitutionally and that the trial court therefore erred in finding that the provision is facially unconstitutional. State Farm Lloyds had challenged the constitutionality of the statute on the basis that it allowed the commissioner to impose confiscatory rates.

7

Regulated companies are constitutionally protected from confiscatory rate orders. A government-set rate must allow a regulated company to not only recover its operating expenses, but also to realize reasonable returns on its investments sufficient to assure confidence in the continued financial integrity of the enterprise. *Duquesne Light Co. v. Barasch*, 488 U.S. 299, 307 (1989); *Railroad Comm'n v. Houston Natural Gas Corp.*, 289 S.W.2d 559, 572 (Tex. 1956). A rate that does not allow for a reasonable rate of return is confiscatory and unconstitutional. *Jersey Cent. Power & Light Co. v. Federal Energy Regulatory Comm'n*, 810 F.2d 1168, 1181 (D.C. Cir. 1987).

Section 4 of article 5.26-1 provides that "the burden of proof is on the insurer to show, by clear and convincing evidence, that the rate reduction specified by the department would produce inadequate rates." Tex. Ins. Code Ann. art. 5.26-1, § 4. A rate is inadequate if it is "insufficient to sustain projected losses and expenses to which the rate applies, and continued use of the rate endangers the solvency of an insurer using the rate," or if the rate "has the effect of substantially lessening competition or creating a monopoly within any market." *Id.* art. 5.142, § 2(b)(2).

Rather than allowing for a reasonable rate of return on investments, article 5.26-1 only safeguards an insurer from rates that could lead to insolvency. While other provisions of the insurance code comport with the constitutional prohibition on confiscatory rates, providing, for example, that rates must be "just," "fair," "reasonable," "adequate," "not confiscatory," and "not excessive," *see id.* arts. 1.02(b), 5.26-1, § 2 (West Supp. 2004-2005 & Supp. 2005), the commissioner is not required to apply constitutional standards when conducting an article 5.26-1 rate review. Article 5.26-1 instead requires the commissioner to approve potentially confiscatory rates, absent clear and convincing evidence that such rates would lead to insolvency. We note, however,

8

that rates can be confiscatory without necessarily leading to insolvency. Thus, the proof provision set out in section 4 of article 5.26, by allowing for the imposition of confiscatory rates, fails to provide regulated companies with a constitutionally adequate review of government-set rates. We therefore hold that the proof provision is unconstitutional on its face.[2] *See Guaranty Nat'l Ins. Co. v. Gates*, 916 F.2d 508, 512 (9th Cir. 1990) (declaring a statute unconstitutional for its failure to provide a mechanism to guarantee a constitutionally required fair and reasonable return to a regulated insurer).

**2. Article 5.26-1 was unconstitutional as applied to State Farm Lloyds.**

Appellants next assert that even if section 4 of article 5.26-1 is unconstitutional on its face, the rate order is valid because the commissioner did not require State Farm Lloyds to meet the unconstitutional proof requirement at the hearing. Citing evidence to the contrary, State Farm Lloyds argues that the unconstitutional proof provision was applied throughout the rate-reduction appeal and that the commissioner's decision following the rate hearing was based on this unconstitutional proof provision.

The record establishes that, when TDI initially notified State Farm Lloyds of its rate reduction, it set out the following proof requirement: "The burden of proof is on the company to show, by clear and convincing evidence, that the rate reduction specified by the department would

---

[2] Appellants argue that the final order was non-confiscatory and, therefore, even if the proof provision was unconstitutional, the order should be upheld. We disagree. Even if the record evidence shows that the rate order allows State Farm Lloyds the opportunity for a reasonable rate of return, the order is void. An unconstitutional statute is void and cannot provide a basis for any right or relief. *City of San Antonio v. Summerglen Prop. Owners Ass'n*, 185 S.W.3d 74, 88 (Tex. App.—San Antonio 2005, pet. denied). Any order that is based on a void statute is likewise void. *See id.* No additional examination of the end result is necessary.

produce inadequate results." In its notice of hearing, TDI reiterated this proof requirement and also included the language of article 5.142: "A rate is inadequate if the rate is insufficient to sustain projected losses and expenses to which the rate applies, and continued use of the rate: (A) endangers the solvency of an insurer using the rate; or (B) has the effect of substantially lessening competition or creating a monopoly within the market." Likewise, TDI used the same language in its opening statement before the commissioner at the merits hearing. Further, in its final order, the commissioner referred to the "inadequate" proof provision, concluding in finding of fact 25 that "State Farm did not show by clear and convincing evidence that the rate reduction specified by the Department would produce inadequate results." Thus, the evidence establishes that this unconstitutional standard—rather than some other constitutional standard—was applied by the commissioner in upholding TDI's rate determination. We hold that article 5.26-1 was unconstitutional as applied to State Farm Lloyds.

### 3. Severability

The parties have challenged no other provision, and we have neither addressed nor found constitutional infirmities in the remainder of the statute.[3] Because we determine that the

---

[3] We emphasize that our holding today declares only one aspect of the proof provision to be unconstitutional and leaves intact the "clear and convincing" burden-of-proof provision in former article 5.26-1. The legislature's intent in this regard was twofold, as it clearly sought to (1) place the burden of proof on the insurer, and (2) implement the higher evidentiary standard of "clear and convincing" evidence, rather than a mere preponderance. In the first respect, the legislature's actions are consistent with the regulatory scheme adopted for utilities rate cases, which places the burden of proof on the utility to show that, depending on the circumstances, the proposed rate change is just and reasonable or the existing rate is just and reasonable. *See* Tex. Util. Code Ann. §§ 36.006 (West 2007) (electric utilities), 53.006 (West 2007) (public utilities), 104.008 (gas utilities) (West 2007).

unconstitutional "inadequate" proof provision of article 5.26-1 is severable, we are compelled to strike only the proof provision and to uphold the remainder of the statute.

When a part of a statutory scheme is unconstitutional, a court should—where possible—sever out the unconstitutional aspects and save the balance of the scheme. Tex. Gov't Code Ann. § 311.032 (West 2005); *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 22-23 (Tex. 2000) (Owen, J., dissenting); *Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 441 (Tex. 1998). According to Texas law on severability:

    (a)    If any statute contains a provision for severability, that provision prevails in interpreting that statute.

    (b)    If any statute contains a provision for nonseverability, that provision prevails in interpreting that statute.

Furthermore, the legislature sought to place a high burden on the insurer to show why its rate—rather than TDI's reduced rate—should be approved. Ordinarily, the clear-and-convincing standard is applied in civil matters only in extraordinary circumstances, such as civil commitment hearings or the involuntary termination of parental rights. *See, e.g.*, Tex. Health & Safety Code Ann. § 574.034(a) (West 2003) (civil commitment); Tex. Fam. Code Ann. § 161.001 (West Supp. 2007) (termination of parental rights); *see also Ellis County State Bank v. Keever*, 888 S.W.2d 790, 792 (Tex. 1994). Where the burden of proof for a contested case is undefined or unclear, we have applied the general civil standard of a preponderance of the evidence because contested cases are civil in nature. *See Southwestern Pub. Serv. Co. v. Public Util. Comm'n*, 962 S.W.2d 207, 213 (Tex. App.—Austin 1998, pet. denied); *Professional Mobile Home Transp. v. R.R. Comm'n*, 733 S.W.2d 892, 899 (Tex. App.—Austin 1987, writ ref'd n.r.e.); *Beaver Express Serv., Inc. v. R.R. Comm'n*, 727 S.W.2d 768, 775 n.3 (Tex. App.—Austin 1987, writ denied).

Here, however, the legislature has expressly required that initial rate hearings be conducted under the clear-and-convincing standard, most likely motivated by its desire to effectively and expeditiously address the insurance-rate crisis and require that initial rates be established and approved within a short time frame. Moreover, under the statute, rates are to be determined by company-specific historical data, *see* Tex. Ins. Code Ann. art. 5.142, § 3(e), which are in the possession and control of the insurers.

11

> (c)    In a statute that does not contain a provision for severability or nonseverability, if any provision of the statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable.

Tex. Gov't Code Ann. § 311.032. In *Rose v. Doctors Hospital*, 801 S.W.2d 841, 844 (Tex. 1990), the Court restated the test for severability:

> When, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, dependent on each other, operating together for the same purpose, or otherwise so connected in meaning that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must stand.

(quoting *Western Union Tel. Co. v. State*, 62 Tex. 630, 634 (1884)). The goal of severability is to retain the valid portions and applications of a statute whenever possible. *Id.* These severability directives also reflect our case law's reminder that "in the construction of statutes, if it can be lawfully done, it is the duty of the court to construe a statute so as to render it valid." *Sharber v. Florence*, 115 S.W.2d 604, 606 (Tex. 1938).[4]

---

[4] As noted above, in the absence of a nonseverability provision, the legislature has demonstrated a preference for severability, instructing courts to preserve valid provisions of a statute wherever possible. Tex. Gov't Code Ann. § 311.032 (West 2005).

Where severability is permissible, the unconstitutionality of one part of a statute should not invalidate the entire statute unless the unconstitutional provision is not separable from the remainder. *Benton*, 980 S.W.2d at 441-42; *see also Harris County Water Control & Improvement Dist. No. 39 v. Albright*, 263 S.W.2d 944, 947 (Tex. 1954); *Black v. Dallas County Bail Bond Bd.*, 882 S.W.2d 434, 437 (Tex. App.—Dallas 1994, no writ) ("An invalid provision does not void any remaining provisions that we can give effect to after deleting the contaminated provision.").[5]

Here, in adopting SB 14, the legislature included a provision for severability:

> If any provision of this Act or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of this Act that can be given effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable.

Tex. Ins. Code Ann. art. 22, § 22.03 (West Supp. 2004-2005). As severability is an inquiry into legislative intent, *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999), we are guided by the legislature's explicit inclusion of this severability provision. *See* Tex. Ins. Code Ann. art. 22, § 22.03. According to the legislature's directive, the severability provision will prevail and the invalid statutory provision shall not affect other provisions that can be given effect without the invalid provision. *See id.*; Tex. Gov't Code Ann. § 311.032(a); *Benton*, 980 S.W.2d at 441-42.

The provision we have held invalid is the proof provision for a rate-review hearing, which requires insurers to prove "that the rate reduction specified by the department would produce

---

[5] On the other hand, we must avoid severing a provision if it would require the court to write words into the statute, to leave gaping loopholes in the statute, or to foresee which of many different possible ways the legislature might respond to the constitutional objections we have found. *Randall v. Sorrell*, 548 U.S. 230, ___, 126 S. Ct. 2479, 2500 (2006).

inadequate results." *See* Tex. Ins. Code Ann. art. 5.26-1, § 4. Despite our removal of the "inadequate" proof provision, several provisions remain that provide guidance to the parties in setting rates and to the commissioner in conducting a rate-review hearing.

Under the insurance code, insurers begin by setting their own rates and filing these rates with TDI. *Id.* art. 5.26-1, § 2(a); art. 5.142, § 4(a); art. 5.13-2, § 5(a). Depending on which provision applies, the insurer may be allowed to immediately begin using those rates, *see id.* art. 5.13-2, § 5(a), or may be required to await TDI's approval of those rates, *see id.* art. 5.142, § 4(a). In setting these rates, insurers are guided by statutory rating criteria. *See id.* art. 5.142, § 3. These statutory guidelines require the insurer to consider:

(1)     past and prospective loss experience inside this state, and outside this state if the state data are not credible;

(2)     the peculiar hazards and experiences of individual risks, past and prospective, inside and outside the state;

(3)     the insurer's historical premium, exposure, loss, and expense experience;

(4)     catastrophe hazards within this state;

(5)     operating expenses, excluding disallowed expenses;

(6)     investment income;

(7)     a reasonable margin for profit; and

(8)     any other relevant factors inside and outside this state.

*Id.* These guidelines specifically direct the insurer to consider a reasonable margin for profit in setting its rates. *Id.* Furthermore, the insurer is directed to base its rates on its own historical

14

premium and loss data, as well as its own data for expenses and for profit and contingency factors. *Id.* § 3(e).

The insurer is further instructed that rates must not be "excessive, inadequate, unreasonable, or unfairly discriminatory for the risks to which they apply." *Id.* § 3(d). Articles 5.142 and 1.02 provide the following definitions of "excessive," "inadequate," and "unfairly discriminatory":

[A] rate is:

(1)      excessive if the rate is likely to produce a long-term profit that is unreasonably high in relation to the insurance coverage provided;

(2)      inadequate if the rate is insufficient to sustain projected losses and expenses to which the rate applies, and continued use of the rate:

    (A)      endangers the solvency of an insurer using the rate; or

    (B)      has the effect of substantially lessening competition or creating a monopoly within any market; or

(3)      unfairly discriminatory if the rate:

    (A)      is not based on sound actuarial principles;

    (B)      does not bear a reasonable relationship to the expected loss and expense experience among risks; or

    (C)      is based in whole or in part on the race, creed, color, ethnicity, or national origin of the policyholder or insured.

Tex. Ins. Code Ann. arts. 1.02(c), 5.142(b).[6] These definitions not only define an inadequate rate as one that "endangers the solvency of an insurer using the rate," but they also set out additional

---

[6] Definitions adopted under article 5.142 apply to article 5.26-1. Tex. Ins. Code Ann. art. 5.26-1, § 1(b) (West Supp. 2004-2005). Article 1.02 was also added by SB 14, which created the three-stage process for regulating the rates of homeowners insurance companies.

rating criteria, including the parameters for a permissible level of long-term profit, which cannot be "unreasonably high in relation to the insurance coverage provided."[7] *Id.*

Reading the statute as a whole and considering article 5.26-1 in light of articles 5.142 and 1.02, the parties are provided with detailed guidance for setting a rate, and the commissioner is given detailed standards for approving or disapproving a filed rate. The unconstitutional "inadequate" proof provision can be severed without requiring "the court to write words into the statute, to leave gaping loopholes in the statute, or to foresee which of many different possible ways the legislature might respond to the constitutional objections." *See Randall v. Sorrell*, 548 U.S. 230, ___, 126 S. Ct. 2479, 2500 (2006). Having severed this unconstitutional "inadequate" provision, we conclude that the remainder of the statute comports with constitutional standards for setting insurance rates, which require that the insurer be permitted to earn a reasonable profit.

In so holding, we note the consistency between our decision in this case and the solution crafted by the California Supreme Court when faced with a similarly imperfect statutory provision aimed at reducing skyrocketing car insurance rates in California. *See Calfarm Ins. Co. v. Deukmejian*, 771 P.2d 1247 (Cal. 1989). The statute passed by the California legislature, Proposition 103, contained a rate-adjustment mechanism that the insurers argued would preclude

___

[7] Although the insurance code further instructs that rates must not be "unreasonable," neither an "unreasonable" nor a "reasonable" rate is explicitly defined. In setting out its rating criteria in article 5.142, the legislature twice referenced the term reasonable: rates must allow for a "reasonable" margin for profit, Tex. Ins. Code Ann. art. 5.142, § 3(b)(7) (West Supp. 2004-2005), and a rate must bear a "reasonable" relationship to the expected loss and expense experience among risks, *id.* § 2(3)(B). Words not defined in a statute are given their plain meaning, read in context, and construed according to the rules of grammar and common usage. Tex. Gov't Code Ann. § 311.011(a) (West 2005); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999). "Reasonable" is defined as "fair, proper, or moderate under the circumstances." Black's Law Dictionary 1272 (7th ed. 1999).

relief from confiscatory rates. *See id.* at 1250. Like the statute at issue here, Proposition 103 provided that "rates and premiums reduced . . . may be only increased if the commissioner finds, after a hearing, that an insurer is substantially threatened with insolvency." *Id.* at 1253. According to the California Supreme Court, such wording violates the constitutional standard of a fair and reasonable return. *Id.* The provision was therefore held to be invalid under the due process clause of the California Constitution and the United States Constitution. *Id.* at 1256.

Having determined that the statute's "insolvency standard" was unconstitutional, the court then turned to the issue of severability. *Id.* Proposition 103 contained a severability clause much like the one in the Texas Insurance Code. As the court discussed in *Calfarm*, California case law provides three criteria for severability: the invalid provision must be grammatically, functionally, and volitionally separable. *See Santa Barbara Sch. Dist. v. Superior Court*, 530 P.2d 605, 617-18 (Cal. 1975). Applying these criteria to the provision in question, the court found the section containing the insolvency standard to be "clearly severable." *Calfarm*, 771 P.2d at 1256. The court determined that the provision was grammatically severable because it could be removed without affecting the wording of any other provision. *Id.* It was also functionally severable because its removal would merely eliminate an exception to the general rate-setting standard of the statute, which would otherwise operate unobjectionably. *Id.* Finally, the provision was volitionally severable because the remainder of the statute would likely have been adopted even if the invalidity of the insolvency standard had been foreseen; the voters "would presumably prefer rate setting and regulation under the balance of the initiative to the method of setting insurance rates which existed before the initiative was enacted." *Id.*

17

As the *Calfarm* court explained, the invalidation and severance of the provision at issue "leaves untouched the general standard for rate adjustment," which states that no "rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter." *Id.* Similarly, in the present case, the invalidation and severance of the provision requiring insurers to prove that the rate reduction specified by TDI would produce inadequate results has no effect on the general standard for rate review. As discussed above, the statute provides that "[a]n approved or modified rate . . . must be just, reasonable, adequate, not excessive, and not unfairly discriminatory for the risks to which it applies." Tex. Ins. Code Ann. art. 5.26-1, § 2(b). Further, given the crisis in the insurance market, the legislature would likely have adopted provisions for rate regulation with or without the sentence in question that sets out the proof requirement. *See Calfarm*, 771 P.2d at 1256.

Because we have held that the proof provision is unconstitutional and must be severed, we conclude that, under the remaining, valid provisions of article 5.26-1, an insurer must show by clear and convincing evidence that a rate filed under article 5.26-1 is "just, reasonable, adequate, not excessive, and not unfairly discriminatory for the risks to which it applies," which means that the rate must allow for a "reasonable profit," but not one that is "unreasonably high in relationship to the insurance coverage provided." *See* Tex. Ins. Code Ann. art. 5.26-1, § 2(b), art. 5.142, §§ 2(b)(1-3), 3(d), art. 1.02(c)(1-3).

### *Due Process*

In their next argument, appellants contend that, despite the expedited proceedings required by article 5.26-1, the proceedings under article 5.26-1 met all procedural due process

18

requirements. In response, State Farm Lloyds argues that, because appellants refused to comply with the APA and TDI's own rules, State Farm Lloyds's due process rights were violated.

In administrative proceedings, due process requires that parties be afforded a full and fair hearing on disputed fact issues. *City of Corpus Christi*, 51 S.W.3d at 262 (Tex. 2001); *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 185 S.W.3d 555, 576 (Tex. App.—Austin 2006, pet. denied). The ultimate test of due process of law in an administrative hearing is the presence or absence of rudiments of fair play. *State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984). Although administrative hearings need not "measure up to judicial standards," agencies cannot be arbitrary or inherently unfair. *Office of Pub. Util. Counsel*, 185 S.W.3d at 576.

We hold that State Farm Lloyds's due process rights were violated by (1) the unconstitutional proof requirement, (2) appellants' failure to apply the APA, and (3) appellants' failure to fulfill certain requirements of due process.

### 1. Unconstitutional proof requirement

Because we have determined that the commissioner applied an unconstitutional proof requirement at the rate-review hearing, we hold that State Farm Lloyds was denied due process in this proceeding.

### 2. Application of the APA

The parties dispute the applicability of the APA to an article 5.26-1 rate-review hearing. According to appellants, because article 5.26-1 does not specifically provide that the APA applies and because article 5.26-1 hearings are to be conducted by the commissioner rather than by

19

the State Office of Administrative Hearings ("SOAH"), the APA cannot apply to an article 5.26-1 rate-review hearing. State Farm Lloyds contends that the APA applies to each provision of the insurance code unless specifically exempted. Because no specific exemption exists in article 5.26-1, it argues, the APA must apply to an article 5.26-1 rate-review hearing.

In determining legislative intent, courts are required to read statutes as a whole and interpret them to give effect to every part. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). The 2003 changes to the system of insurance regulation were implemented in three phases by articles 5.26-1, 5.142, and 5.13-2. For each of the three phases, the legislature set out certain procedures. For initial rate filings, the legislature provided that hearings would be conducted by the commissioner, not by SOAH. Tex. Ins. Code. Ann. art. 5.26-1, § 4. No specific provision was made for the application of the APA to an article 5.26-1 rate-review hearing. For the second phase of implementation, rates were to be filed and pre-approved by the commissioner under article 5.142. Article 5.142 specifically provided that chapter 2001 of the government code was to apply to all article 5.142 rate-review hearings. *Id.* art. 5.142, § 11. Although, as under article 5.26-1, the commissioner was to conduct the hearing, the commissioner was specifically instructed to do so under the APA. *Id.* art. 5.142, § 9. Finally, article 5.13-2, which established the permanent file-and-use system, specifically provided that the APA was to apply to all article 5.13-2 rate-review hearings.

In determining legislative intent as to the APA's applicability, we acknowledge the time constraints that the legislature imposed for conducting an article 5.26-1 initial rate filing and rate-review hearing.[8] We further consider that, while the legislature made no specific provision for

---

[8] Insurers were required to file their initial regulated rates with TDI within twenty days of the effective date of SB 14, June 11, 2003, and to implement the rates immediately. Tex. Ins. Code Ann. art. 5.26-1, § 2(a). Within forty days of the filing deadline, TDI was required to review and either approve or modify the initial rates. *Id.* art. 5.26-1, § 2(b).

the APA's application to an article 5.26-1 rate-review hearing, the legislature specifically provided that the APA would apply to rate-review hearings under articles 5.142 and 5.13-2. If the general provisions of the insurance code regarding the general applicability of the APA applied to articles 5.26-1, 5.142, and 5.13-2, then the specific provision for application of the APA in articles 5.142 and 5.13-2 would have been unnecessary and redundant. Thus, we conclude that the legislature did not intend that the APA apply to a 5.26-1 rate-review hearing.

In the present case, however, even though not required by statute, TDI opted to apply the APA by noticing the hearing under both the APA and its own rules for contested case hearings. By giving notice to State Farm Lloyds that the hearing was to be conducted under the APA, the department was required to conduct the hearing as noticed. Although bound to apply the APA by its own notice of hearing, the department failed to do so. By noticing the hearing under the APA and then failing to apply it, appellants denied State Farm Lloyds the due process to which it was entitled.

### 3. Due process requirements

Even if TDI had not noticed the hearing under the APA and was, therefore, not required to comply with it, appellants were required to conduct the hearing so that State Farm Lloyds was afforded due process. In an administrative hearing, due process means that parties be afforded a full and fair hearing on disputed fact issues. *City of Corpus Christi*, 51 S.W.3d at 262; *Office of Pub. Util. Counsel*, 185 S.W.3d at 576. The basic elements of due process at the agency level are notice, hearing, and an impartial trier of facts. *Texas Dep't of Pub. Safety v. Monroe*, 983 S.W.2d 52, 56 (Tex. App.—Houston [14th Dist.] 1998, no pet.). A full and fair hearing includes the right to cross-examine adverse witnesses and to present and rebut evidence. *City of Corpus Christi*, 51 S.W.3d at 262.

### a.      *Impartial decision maker*

State Farm Lloyds argues that its due process rights were violated because the decision maker was biased, citing evidence that the commissioner made a public statement concerning the disposition of State Farm Lloyds's rate determination prior to the hearing. Appellants maintain that due process permits the commissioner to take a public view on the matter, even before hearing, as long as he is "capable of judging a particular controversy fairly on the basis of its own circumstances." *See Hortonville Joint Sch. Dist. v. Hortonville Educ. Ass'n*, 426 U.S. 482, 493 (1976).

We begin with the presumption that decision makers are unbiased. *Hammack v. Public Util. Comm'n*, 131 S.W.3d 713, 731 (Tex. App.—Austin 2004, pet. denied). To overcome that presumption, State Farm Lloyds must show that the commissioner's mind was "irrevocably closed" to the matter before him so that he was incapable of impartially judging the evidence and testimony to be presented at the hearing. *Id.*

State Farm Lloyds has failed to meet this burden. In support of its claim, it cites to one conversation between the commissioner and a reporter. The reporter asked the commissioner if he believed that TDI had incorrectly determined that the rates filed by State Farm Lloyds were unreasonable; the commissioner responded, "No." Based on this evidence, State Farm Lloyds concludes that the commissioner prejudged the outcome of the case because he admitted before the hearing that he believed his staff's determination was correct, although he had not yet seen the evidence or heard the testimony of State Farm Lloyds. We presume that, despite communicating what he believed to be the correct disposition before the hearing, the commissioner was still able to hear all the testimony and evidence and make an impartial decision. "It is well established that

absent a showing of incapability to decide a particular controversy fairly, an administrative officer is not disqualified simply because he or she has previously taken a position, even in public, on a policy issue related to a particular dispute." *Texas Utils. Elec. Co. v. Public Util. Comm'n*, 881 S.W.2d 387, 392 (Tex. App.—Austin 1994), *rev'd in part on other grounds*, 935 S.W.2d 109 (Tex. 1996) (citing *United States v. Morgan*, 313 U.S. 409, 421 (1941)). We recognize that, having prepared in advance for hearings, and based on information learned in their preparations, most decision makers have some notion of how they will decide a case. This is no evidence that those decision makers do not carefully review and weigh the evidence and testimony as presented; it simply means they were prepared. State Farm Lloyds has presented no evidence to show that the commissioner did not properly listen to, consider, and weigh the evidence presented before making his final decision.

### b.      Full and fair hearing

State Farm Lloyds argues that it was denied a full and fair hearing because appellants denied it the discovery to which it was entitled under the APA and under TDI's discovery rules. We have concluded that, because TDI noticed the hearing under both the APA and its own discovery rules, the department was bound to abide by them.

Because we have found that the APA and TDI's rules for contested cases applied to the rate-review hearing, we agree with State Farm Lloyds that appellants violated both sets of rules in denying State Farm Lloyds the discovery to which it was entitled. Both the APA and TDI's own rules provide for broad discovery consistent with the directives of the Texas Rules of Civil Procedure. *See* Tex. Gov't Code Ann. § 2001.091; 28 Tex. Admin. Code § 1.82. State Farm Lloyds

requested discovery pursuant to TDI's rules of practice and procedure. *See* 28 Tex. Admin. Code § 1.82. Although appellants argue that they substantially complied with the APA and with TDI's own rules, they concede that State Farm Lloyds was permitted only one brief, one-and-a-half-hour deposition of only one of TDI's two experts. TDI refused to produce for deposition any of its employees with knowledge of relevant facts about TDI's rate-adjustment determination, denied all of State Farm Lloyds's requests for documents and interrogatories, and withheld the workpapers and exhibits of its testifying expert until after State Farm Lloyds prefiled its direct case. By refusing all discovery except for one strictly limited deposition of one of its experts, appellants violated the discovery provisions of both the APA and TDI's own rules, which allow for broad, party-initiated discovery. *See id.*; Tex. Gov't Code Ann. § 2001.091.

Even if TDI had not noticed the hearing under the APA, appellants would still have been required to comply with TDI's own rules for contested case hearings. TDI's procedural rules apply to "any matter within the jurisdiction of the board, the commissioner or the fire marshal." 28 Tex. Admin. Code § 1.1. Except as otherwise specifically provided, TDI's procedural rules "govern the procedure for the institution, conduct, and determination of proceedings before the board, the commissioner, or the fire marshal." *Id.* As already explained, TDI's rules provide for broad, party-initiated discovery consistent with the Texas Rules of Civil Procedure. *Id.* § 1.82. Thus, even if the APA did not apply, TDI's rules of procedure would have required that it allow State Farm Lloyds to conduct its requested discovery. The requested discovery would have been possible even under the time constraints of an article 5.26-1 rate-review hearing, as TDI's rules permit the hearings officer to shorten or lengthen the discovery response times as the interest of justice requires. *Id.* § 1.84.

24

We hold that State Farm Lloyds was denied a full and fair hearing because it was denied the discovery it requested, discovery that should have been permitted under both the APA and TDI's own rules of procedure. Even if the hearing had not been noticed under the APA and the APA had not applied, TDI would have been required to comply with its own rules of procedure, which apply to all matters within its jurisdiction and, like the APA, allow for broad, party-initiated discovery.

### c.  *APA's requirements for evidentiary findings*

State Farm Lloyds contends that the commissioner's final order violates the APA's requirement that "findings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings." *See* Tex. Gov't Code Ann. § 2001.141(d) (West 2000). As we have concluded, because the hearing was noticed under the APA, the APA is applicable. Although the commissioner's order denying State Farm Lloyds's appeal set out only a single conclusion of law,[9] his order included 25 findings of fact. These 25 findings of fact provided a detailed account of the underlying facts, as required by statute. We conclude that the commissioner's order was consistent with the APA's requirement that the final order "be accompanied by a concise and explicit statement of the underlying facts supporting the findings." *See id.*[10]

---

[9] The commissioner's single conclusion of law stated: "Based upon the evidence admitted and reviewed by the Commissioner, it is the Commissioner's opinion that the rate reduction recommended by the Department will produce adequate base rates for State Farm."

[10] Although we address this issue as part of the parties' due process argument, we note that, on remand, the wording of this original order will have no bearing on the case. Further, whether the APA even applies will depend on how the hearing is noticed by TDI.

*Remand*

State Farm Lloyds argues that remand is not appropriate, warranted, or legally authorized because doing so would essentially re-enact the Senate Bill 14 implementation process retrospectively. Because article 5.26-1 prescribed strict deadlines for insurers to make their initial rate filings and for the corresponding rate-review hearings, State Farm Lloyds urges that any further review now that those deadlines have passed must be conducted under the continuing, permanent review process currently in place, "regardless of the outcome of this case." Because State Farm Lloyds's interpretation would lead to an absurd result that the legislature could not have intended, we reject this contention.

The legislature, when it enacted article 5.26-1, made express provision for the expiration of the first phase of the transitional regulatory system. Section 7 of article 5.26-1 states:

(a)     This article expires September 1, 2004.

(b)     The expiration of this article does not affect an action or proceeding against an insurer subject to that law for a failure to comply with that law before its expiration, regardless of when the action or proceeding was commenced, and that law is continued in effect for that purpose.

Tex. Ins. Code Ann. art. 5.26-1, § 7. In its enactment of this temporary provision, the legislature contemplated that circumstances might arise—as in this case—in which a proceeding would continue past the September 1, 2004 deadline. Because the legislature provided for the continuation of proceedings that were not completed before article 5.26-1's expiration, remand is permissible. Here, because of errors in the original proceeding, including the application of an unconstitutional proof provision and violations of due process, remand is both appropriate and required.

26

*See* Tex. Gov't Code Ann. § 2001.174 (court reviewing a contested case "shall reverse or remand the case for further proceedings"); *First Sav. & Loan Ass'n of Del Rio v. Lewis*, 512 S.W.2d 62, 64 (Tex. Civ. App.—Austin 1974, writ ref'd n.r.e.) ("In general, it may be said that if the reviewing court finds error in the agency order, it may remand the case to the agency for further consideration.").

State Farm Lloyds argues that section 7 is inapplicable here because this is not "an action or proceeding against an insurer subject to that law for a failure to comply with that law before its expiration." Although State Farm Lloyds initiated the appeal, the appeal arose because of TDI's determination that State Farm Lloyds had failed to comply with the statute by filing a rate that did not qualify as "just, reasonable, adequate, not excessive, and not unfairly discriminatory for the risk to which it applie[d]." *See* Tex. Ins. Code Ann. art. 5.26-1, § 2(b). Further, article 5.26-1 makes no other provision for TDI to initiate "an action or proceeding against an insurer . . . for a failure to comply with the law" other than the appeal and hearing provisions, which, although initiated by the insurer, arise because of TDI's disapproval of the insurer's filed rate. *See id.* Section 7(b) would have no application under article 5.26-1 if it did not apply to an insurer-initiated rate-review hearing.

We also recognize that the legislature contemplated continued proceedings of an article 5.26-1 rate-review hearing beyond final disposition of the appeal. Section 6 provides:

> If on final appeal the court upholds the commissioner's determination that the insurer's rates are excessive, the insurer shall refund the difference in overcharged premium to each policy holder, plus interest.

Tex. Ins. Code Ann. art. 5.26-1, § 6. If article 5.26-1 became inoperable after the September 1, 2004 expiration date, then no refund could be had and section 6 of article 5.26-1 would be meaningless.

27

Indeed, if a pending proceeding under article 5.26-1 could not proceed past the September 1, 2004 expiration date, the appeal itself would be essentially moot after September 1, 2004, because the insurer, who is authorized to charge its filed rates during the appeal, would face no consequences if it lost the appeal. If article 5.26-1 were inoperable in the manner suggested by State Farm Lloyds, the insurer could not issue refunds even if—on final disposition—the court found its rates to be excessive. Such a result would render the appeal provisions of the statute meaningless, a result that we conclude the legislature did not intend. *See Lowe v. Rivera*, 60 S.W.3d 366, 369 (Tex. App.—Dallas 2001, no pet.) (stating that statutes should not be construed in a manner that leads to absurd results).

Because we conclude that the legislature intended article 5.26-1 to continue in effect to the final conclusion of all pending cases, including appeal and remand, and that, to effectuate such intent the legislature intended section 7(b) apply to an article 5.26-1 rate-review hearing, we hold that remand is permissible and authorized where there was an error in the proceedings.[11] *See First Sav. & Loan Ass'n of Del Rio*, 512 S.W.2d at 64.

---

[11] We recognize that, after the case was initially heard, the commissioner made several findings of fact as to the reasonableness, adequacy, and excessiveness of the rates:

17. The modified rate determined by the Department is reasonable.
18. The modified rate determined by the Department is adequate.
20. The modified rate determined by the Department is not excessive.
22. The modified rate determined by the Department is not inadequate, as defined by art. 5.142(b)(2).

Because of the confusion as to the proof provision, which we have declared unconstitutional, and because we have concluded that State Farm Lloyds was not afforded due process, the commissioner's findings of fact no longer have any meaning. Only after the proper proof requirement is applied and after State Farm Lloyds is given due process as set out in this opinion will the commissioner be able to provide a meaningful assessment of the reasonableness, adequacy, and excessiveness of the rates at issue.

28

**CONCLUSION**

Because we conclude that the portion of section 4 of article 5.26-1 setting out the insurer's proof requirement is unconstitutional on its face and as applied to State Farm Lloyds and that State Farm Lloyds was denied constitutionally adequate review of TDI's rate order, we affirm the judgment of the trial court as to the insurer's proof requirement and as to due process. We sever the unconstitutional provision requiring an insurer to prove that a rate reduction by TDI would produce inadequate rates, reverse the trial court's judgment as to the constitutionality of the remainder of the statute, and remand to the department for further proceedings consistent with this opinion.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed in part; Reversed and Remanded in part

Filed:   May 22, 2008