# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 15-50452

—————

United States Court of Appeals
Fifth Circuit

**FILED**

August 11, 2016

Lyle W. Cayce
Clerk

UNINCORPORATED NON-PROFIT ASSOCIATION OF CONCERNED EASTSIDE CITIZENS AND PROPERTY OWNERS,

> Plaintiff - Appellant

v.

CITY OF SAN ANTONIO,

> Defendant - Appellee

CROSSPOINT, INCORPORATED,

> Intervenor - Appellee

————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:09-CV-905

————————————

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

This appeal concerns a zoning dispute.  In 2009, the City of San Antonio rezoned a parcel of land for use as a halfway house for parolees.  The plaintiff filed suit alleging the City's rezoning ordinance constituted impermissible spot zoning.  In 2011, the City passed a new ordinance relaxing citywide zoning

———

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-50452

requirements for halfway houses.  The district court held that the change mooted the plaintiff's claim.  The plaintiff appeals that holding as well as the district court's order granting Crosspoint's motion to intervene.  We AFFIRM.

FACTS AND PROCEDURAL HISTORY

At the center of this case is a parcel of land located at 301 Yucca Street, San Antonio, Texas (the "Property").  Since the 1920s, the Property was used as a church and convent by the Sisters/Servants of the Holy Ghost and Mary Immaculate.  Sometime before 2009, the Sisters began negotiations to convey the Property to Ridgemont Investment Group, LLC and Intervenor Crosspoint, Inc.  "Crosspoint operates correctional and rehabilitative facilities, and intended to use the . . . Property as short-term housing for parolees as they transition from prison to release."  These facilities are otherwise known as "transitional homes."

Crosspoint's plan presented a zoning dilemma.  The Property "had a base zoning designation of 'MF-33,' a multi-family residential zoning designation."  Yet at that time, the City Code provided two zoning requirements for a transitional home: (1) a base zoning designation of at least C-3, a commercial zoning designation; and (2) a Specific Use Authorization.  Presumably to facilitate the planned conveyance, the Sisters filed an application and request for rezoning of the Property, seeking both a C-3 zoning designation and a Specific Use Authorization.

City zoning staff recommended denying the application, explaining the C-3 zoning designation was too "intense" for the neighborhood surrounding the Property.  The Property "was surrounded mostly by residences and located within 1000 feet of a public park or school."  Despite concerns by the zoning staff, the Zoning Commission recommended approval.

No. 15-50452

After a public hearing, the City Council enacted Ordinance 2009-09-17-0758 (the "2009 Ordinance"), the subject of this dispute.  It states:

> Chapter 35, Unified Development Code, Section 35-304, Official Zoning Map, of the City Code of San Antonio, Texas is amended by changing the zoning district boundary of 4.914 acres of Block 16, NCB 1546 and Block 20, NCB 1551 *from "MF-33" Multi-Family District to "C-3 NAS" General Commercial District with a Specific Use Authorization for a Correctional Facility (Transitional Home).*

(emphasis added).

Once the transitional home began operating, property values in the surrounding neighborhood decreased between 25% and 35%.  Affected homeowners formed Plaintiff Unincorporated Non-Profit Association of Concerned Eastside Citizens and Property Owners (the "Citizens Association").  On October 12, 2009, the Citizens Association sued the City in Bexar County District Court, challenging the 2009 Ordinance.  The case was removed to the United States District Court for the Western District of Texas.  On January 15, 2010, the Citizens Association filed an amended complaint, alleging the 2009 Ordinance constituted impermissible spot zoning.[1]

Both parties moved for summary judgment.  While these motions were pending, the City Council amended its City Code with what we will call the "2011 Ordinance."  The new ordinance altered the City's base zoning requirements for transitional homes.  It "allow[ed] transitional homes to operate on property with a base zoning designation of MF-33 — the same designation that the . . . Property had prior to the 2009 Ordinance — so long

---

[1] The magistrate judge in this case explained that "[t]he term, 'spot zoning,' is used in Texas and most states to connote an unacceptable amendatory ordinance that singles out a small tract for treatment that differs from that accorded similar surrounding land without proof of changes in conditions."

The Citizens Association also alleged the 2009 Ordinance "deprived the organization's members of procedural and substantive due process, violated [] the equal protection clause, and amounted to unconstitutional takings," and also sought a declaratory judgment.  These other claims were all resolved in the defendants' favor and are not part of this appeal.

No. 15-50452

as the City grants the property a Specific Use Authorization." The parties did not supplement their cross-motions to address the new ordinance.

Six months after the 2011 Ordinance went into effect, a magistrate judge recommended awarding summary judgment to the Citizens Association on its spot-zoning claim. On July 11, 2011, before the district court had ruled on the existing parties' cross-motions, Crosspoint filed a motion to intervene. Crosspoint's motion was granted, and the district court re-opened discovery. Nearly one year later, Crosspoint filed an "Advisory to the Court" presenting its own arguments in support of the City's motion for summary judgment, including arguing for the first time that the spot-zoning claim had been rendered moot by the 2011 Ordinance. On April 21, 2015, the district court granted the City's motion for summary judgment. In relevant part, the district court held the Citizens Association's spot-zoning claim was rendered moot by the 2011 Ordinance. The Citizens Association timely appealed.

DISCUSSION

The Citizens Association raises two issues on appeal: (1) The spot-zoning claim should not have been found moot, and (2) Crosspoint's motion to intervene should have been denied.

I.    *Spot Zoning / Mootness*

Assuming without deciding that the 2009 Ordinance constituted impermissible spot zoning, the district court held the claim was rendered moot by the 2011 Ordinance. The 2009 Ordinance consisted of two components: (1) it rezoned the Property from MF-33 to C-3; and (2) it granted the requisite Specific Use Authorization. The district court held the two components severable. As a result, "even if the [district] [c]ourt were to void the rezoning portion of the 2009 Ordinance, the . . . Property would revert to a zoning

4

designation of MF-33 but keep the Specific Use Authorization to operate a transitional home." Under the 2011 Ordinance, an MF-33 zoning designation is sufficient, when paired with a Specific Use Authorization, to operate a transitional home. Thus, the district court held an order striking the rezoning portion of the 2009 Ordinance would still allow Crosspoint to operate, and the Citizens Association's claim was moot.

On appeal, the Citizens Association contends the district court erroneously held the 2009 Ordinance severable and consequently the spot-zoning claim moot. The Citizens Association claims the two portions of the 2009 Ordinance are intertwined. We review *de novo* "[j]urisdictional issues such as mootness . . . ." *Lopez v. City of Houston*, 617 F.3d 336, 339 (5th Cir. 2010). Similarly, "we review *de novo* the district court's interpretation of state law." *Texaco Inc. v. Duhe*, 274 F.3d 911, 915 (5th Cir. 2001).

In federal court, "a case or controversy must exist at all stages of the litigation, not just at the time the suit was filed." *Lopez*, 617 F.3d at 340. "Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015).

In this mootness inquiry, the district court identified correctly the dispositive issue as whether the 2009 Ordinance is severable. If it is severable, the claim is moot. If it is not, there remains a live controversy.

The severability of provisions of a state statute or a city ordinance, when a part is held to be unconstitutional, is a question of state law. *National Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011) (statutes); *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 537 (5th Cir. 2013) (en banc) (city ordinances). Under Texas law, as a general matter, "[w]hen a part of a statutory scheme is unconstitutional, a court should — where possible — sever out the unconstitutional aspects and save the balance

of the scheme." *Geeslin v. State Farm Lloyds*, 255 S.W.3d 786, 797 (Tex. App.—Austin 2008, no pet.). The Texas Government Code states:

> (a) If any statute contains a provision for severability, that provision prevails in interpreting that statute.
> (b) If any statute contains a provision for nonseverability, that provision prevails in interpreting that statute.
> (c) In a statute that does not contain a provision for severability or nonseverability, if any provision of the statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable.

TEX. GOV'T CODE ANN. § 311.032.[2]

Because "severability is an inquiry into legislative intent," we may be "guided by the legislature's explicit inclusion of [a] severability provision." *Geeslin*, 255 S.W.3d at 798. The San Antonio City Code has an explicit severability provision:

> The sections, paragraphs, sentences, clauses and phrases of this Code are severable, and if any phrase, clause, sentence, paragraph or section of this Code shall be declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Code.

SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 1, § 1-17 (2016).[3] The district court held "[t]his directive is a clear statement of the City Council's legislative intent, and as such it guides this Court's inquiry."

---

[2] It is unclear from the text whether this statute applies when interpreting a city ordinance. The Supreme Court of Texas recently clarified the issue, though, by applying Section 311.032 when it assessed the severability of a Houston ordinance. *See City of Houston v. Bates*, 406 S.W.3d 539, 549 (Tex. 2013).

[3] The San Antonio City Code is available at https://www.municode.com/library/tx/san_antonio/codes/code_of_ordinances.

No. 15-50452

Now, for the first time on appeal, the Citizens Association argues the City's severability provision is inapplicable to zoning ordinances. It relies on a different provision in the City Code: "Nothing in this Code or the ordinance adopting this Code shall affect any ordinance . . . [d]ealing with zoning." SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 1, § 1-3(a)(11). The meaning of Section 1-3 is unclear. Regardless, this argument is waived. Crosspoint raised the Section 1-17 severability provision before the district court. The Citizens Association failed to address Section 1-3. "[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). We thus do not discuss the possible impact of Section 1-3 on severability.

We now consider the severability of the 2009 Ordinance in the context of a code containing an express severability provision. *See* SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 1, § 1-17. Texas law compels "that provision prevails in interpreting [the] statute." TEX. GOV'T CODE ANN. § 311.032(a).

The Texas Supreme Court recently applied an identical severability provision found in Houston's city code. *See City of Houston v. Bates*, 406 S.W.3d 539, 549 (Tex. 2013). In *Bates*, three firefighters brought suit seeking reimbursement for unpaid "termination pay." *Id.* at 542–43. They each held unused sick and vacation leave at the time they left the Houston Fire Department. *Id.* The firefighters argued that a city ordinance limiting termination pay was preempted by state statute. *Id.* at 546–49. The City responded that, if the Texas Supreme Court agreed with the firefighters' argument, the court would also have to invalidate a separate city ordinance that was "connected in subject matter and [could not] be fairly severed and enforced separately from" the challenged ordinance. *Id.* at 549. The court referenced the Houston code's severability clause, and explained "[w]hen an ordinance contains an express severability clause, the severability clause

7

prevails when interpreting the ordinance." *Id.* Without discussing whether the challenged ordinance was "connected in subject matter" with other city ordinances, the court held the challenged ordinance severable. *Id.*

San Antonio has an express severability clause identical to the clause discussed in *Bates*. We conclude that, as in *Bates*, it is unnecessary to analyze whether the zoning classification and the Specific Use Authorization were intertwined. The two portions are severable according to Section 1-17.

A different chapter of the City Code provides further support for our conclusion. Chapter 35 of the San Antonio City Code is labeled the "Unified Development Code" and appears to contain all city zoning ordinances, including the 2009 Ordinance. Chapter 35 includes its own severability provision that also seems to apply to the 2009 Ordinance:

> If for any reason any one (1) or more section, sentences, clauses or parts of this chapter are held invalid, such judgment shall not affect, impair or invalidate the remaining provisions of this chapter but shall be confined in its operation to the specific sections, sentences, clauses or parts of this chapter held invalid. The invalidity of any section, sentence, clause or part of this chapter in any one or more instances shall not affect or prejudice in any way the validity of this chapter in any other instance.

SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 35, § 35-110. No party addressed the significance of Chapter 35. Even when a "City ordinance was never introduced into the record, we [may] take judicial notice of it." *See In re Waller Creek, Ltd.*, 867 F.2d 228, 238 n.14 (5th Cir. 1989).[4]

---

[4] We have already held the Citizens Association's Section 1-3 argument is waived. Even if we considered the meaning of Section 1-3, though, the very existence of Chapter 35 cuts sharply against the Citizens Association's proposed interpretation. Section 1-3 states: "Nothing in this Code or the ordinance adopting this Code shall affect any ordinance . . . [d]ealing with zoning." SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 1, § 1-3(a)(11). According to the Citizens Association, Section 1-3 compels a holding that the "San Antonio City Code . . . unambiguously does not apply to zoning ordinances." The proposed interpretation is at odds with the fact that the City Code includes an entire chapter of zoning

No. 15-50452

Even assuming the 2009 Ordinance's rezoning portion must be stricken, the Property would still hold the requisite Specific Use Authorization. Further, with the 2011 Ordinance, Crosspoint would still be able to operate its transitional home even if the Property reverted back to an MF-33 base zoning designation. The Citizens Association's spot-zoning claim is moot.

## II.    *Crosspoint's Motion to Intervene*

The Citizens Association also challenges the district court's order granting Crosspoint's motion to intervene. At oral argument, in response to a question from the panel, the Citizens Association acknowledged that "if the court rules against us on the severability issue . . . all of our claims are gone, . . . our claims are moot and all of the issues at that point would be gone." We agree with the attorney's analysis and find the concession appropriate. Accordingly, having decided the 2009 Ordinance is severable and the spot-zoning claim is moot, we need not consider whether the district court erroneously granted Crosspoint's motion to intervene.

AFFIRMED.

ordinances — Chapter 35. We do not resolve this apparent tension between the Citizens Association's interpretation of Section 1-3 and the existence of Chapter 35.