ACCEPTED
03-14-00375-CV
6564692
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/19/2015 2:17:41 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00375-CV

# In the Court of Appeals
## for the Third Judicial District
## Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/19/2015 2:17:41 PM
JEFFREY D. KYLE
Clerk

AUSPRO ENTERPRISES, LP,
*Appellant*,

v.

TEXAS DEPARTMENT OF TRANSPORTATION,
*Appellee.*

On Appeal from the
345th Judicial District Court of Travis County, Texas

**APPELLEE'S SUPPLEMENTAL BRIEF ADDRESSING THE EFFECT OF *REED V. TOWN OF GILBERT*, 135 S. CT. 2218 (2015)**

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

SCOTT A. KELLER
Solicitor General

DOUGLAS D. GEYSER
Assistant Solicitor General
State Bar No. 24059817

MATTHEW BOHUSLAV
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-2540
Fax: (512) 474-2697
*douglas.geyser@texasattorneygeneral.gov*

**ORAL ARGUMENT CONDITIONALLY REQUESTED**

# TABLE OF CONTENTS

Index of Authorities..................................................................... iii

Supplemental Statement Regarding Oral Argument ............................v

Argument....................................................................................3

    I.    *Reed* Considered A Law That On Its Face Imposed Harsher Restrictions On The Plaintiffs' Signs Solely Due To Their Content. ..........................................................3

    II.   AusPro's Sign Violated Content-Neutral Restrictions Under The Act. ........................................................................7

        A.    AusPro's Challenge Misreads The Act And *Reed*'s Effect. .........................................................................7

        B.    Even If AusPro Could Successfully Challenge Section 391.005's Election-Sign Exemption, The Proper Remedy Would Be To Invalidate Only That Section. ...................................................................12

    III.  *Reed* Is Wholly Immaterial To AusPro's Prior-Restraint Challenge..........................................................................16

    IV.  *Reed* Also Has No Bearing On Any Independent Protection Afforded By The Texas Constitution. ..................18

Prayer .......................................................................................20

Certificate of Service .................................................................21

Certificate of Compliance...........................................................21

# INDEX OF AUTHORITIES

## Cases

*Brockett v. Spokane Arcades, Inc.*,
472 U.S. 491 (1985) .........................................................................13

*Covenant Media LLC v. City of N. Charleston*,
493 F.3d 421 (4th Cir. 2007) .........................................................13

*Coral Springs St. Sys., Inc. v. City of Sunrise*,
371 F.3d 1320 (11th Cir. 2004) ................................................14-15

*Geeslin v. State Farm Lloyds*,
255 S.W.3d 786 (Tex. App.—Austin 2008, no pet.) .......12-13, 13-14

*Hill v. Colorado*,
530 U.S. 703 (2000) ...........................................................................8

*Houston Chronicle Publ'g Co. v. City of League City*,
488 F.3d 613 (5th Cir. 2007) ..........................................................12

*Jornaleros de Las Palmas v. City of League City*,
945 F. Supp. 2d 779 (S.D. Tex. 2013).............................................12

*Kinney v. Barnes*,
443 S.W.3d 87 (Tex. 2014)..............................................................19

*McCormack v. Twp. of Clinton*,
872 F. Supp. 1320 (D.N.J. 1994) ...................................................12

*Operation Rescue-Nat'l v. Planned Parenthood of Houston &
Se. Tex., Inc.*,
975 S.W.2d 546 (Tex. 1998)............................................................19

*Reed v. Town of Gilbert*,
135 S. Ct. 2218 (2015) ............................................................*passim*

*Rose v. Doctors Hosp.*,
801 S.W.2d 841 (Tex. 1990)............................................................14

*Serv. Emps. Int'l Union, Local 5 v. City of Houston*,
    595 F.3d 588 (5th Cir. 2010) ......................................................8

*Tex. Dep't of Transp. v. Barber*,
    111 S.W.3d 86 (Tex. 2003)......................... v, 2, 6, 7-8, 9, 10, 11, 15

*Voting for Am., Inc. v. Steen*,
    732 F.3d 382 (5th Cir. 2013) ..................................................13

**Constitutional Provisions, Statutes, and Rules**

43 TEX. ADMIN. CODE § 21.146(a)(9)..........................................16

Act of Apr. 25, 1997, 75th Leg., R.S., ch. 60, § 1, 1997 Tex.
    Gen. Laws 129 ..................................................................15

TEX. GOV'T CODE § 311.032(c).......................................... 13, 16

TEX. TRANSP. CODE § 391.002(b).............................................15

TEX. TRANSP. CODE § 391.005...................... v, 7, 10, 14, 15, 16

TEX. TRANSP. CODE § 391.031(a)(1) ...................................8, 9-10

TEX. TRANSP. CODE § 391.031(b).............................................11

TEX. TRANSP. CODE § 391.061..................................................16

TEX. TRANSP. CODE § 391.067..................................................16

TEX. R. APP. P. 33.1(a) .........................................................17

TEX. R. APP. P. 38.1(i) .........................................................11

iv

**SUPPLEMENTAL STATEMENT REGARDING ORAL ARGUMENT**

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), does not change the proper outcome of this case or create a need for oral argument. AusPro's assertion that *Reed* "undoubtedly" requires reversal, AusPro Supplemental Brief ("Supp. Br.") ii, rests on the same misreading of the Texas Highway Beautification Act that infected its opening brief. AusPro continues to argue that the election-speech exemption (TEX. TRANSP. CODE § 391.005) disfavors election speech, but that is incorrect. If anything, the exemption treats election speech *better* than other speech. That is the whole point of the exemption, namely, to *save* some election-related signs from the Act's general ban. Although it is true that the Act favors onsite election speech over offsite election speech (like AusPro's sign), "[r]ules distinguishing between on-premises and off-premises signs" remain content-neutral. *Reed*, 135 S. Ct. at 2233 (Alito, J., concurring); *see Tex. Dep't of Transp. v. Barber*, 111 S.W.3d 86, 99 (Tex. 2003) (upholding constitutionality of the Act because it "allows all onsite commercial speech and *all* onsite noncommercial speech"). *Barber* therefore remains controlling. Should the Court nonetheless decide to hear oral argument, the Department respectfully requests to participate.

No. 03-14-00375-CV

# In the Court of Appeals
# for the Third Judicial District
# Austin, Texas

AUSPRO ENTERPRISES, LP,
*Appellant*,
v.
TEXAS DEPARTMENT OF TRANSPORTATION,
*Appellee.*

On Appeal from the
345th Judicial District Court of Travis County, Texas

**APPELLEE'S SUPPLEMENTAL BRIEF ADDRESSING THE EFFECT OF**
***REED V. TOWN OF GILBERT*, 135 S. CT. 2218 (2015)**

TO THE HONORABLE THIRD COURT OF APPEALS:

AusPro's contention that *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), affects this appeal rests on a misreading of that case and, more fundamentally, a misunderstanding of how the Texas Highway Beautification Act (the "Act") operates. As it did in its opening brief, AusPro erroneously argues that the election-speech exemption prohibits its sign in violation of the First Amendment. To the contrary, that exemption allows certain election speech that would otherwise be barred by the Act's general, content-neutral prohibition of signs visible from

highways. Even if the exemption draws a content-based line, that line would, if anything, favor the very type of election speech that AusPro advocates. The exemption thus in no way harms AusPro, and *Reed*'s implications for this Court's consideration of that exemption are consequently immaterial.

The Texas Supreme Court's decision in *Texas Department of Transportation v. Barber*, 111 S.W.3d 86 (Tex. 2003), which upheld the Act against a free-speech challenge, remains binding after *Reed*. Not only did *Reed* not consider the kind of offsite-sign ban that the Act imposes, three of the six justices who joined the majority opinion explicitly concluded that such a ban remains a content-neutral restriction. Accordingly, because AusPro has not challenged the Act's general ban on signs near Texas highways and such a challenge would fail in any event, the trial court's judgment should be affirmed.

## I. *REED* CONSIDERED A LAW THAT ON ITS FACE IMPOSED HARSHER RESTRICTIONS ON THE PLAINTIFFS' SIGNS SOLELY DUE TO THEIR CONTENT.

The town's sign code in *Reed* bears little resemblance to the Act. The town prohibited outdoor signs everywhere within its borders but exempted 23 categories to various degrees. 135 S. Ct. at 2224. Most notably, the town allowed "ideological signs" in all zoning districts at all times of the year; "political signs" in only certain zoning districts during limited times around elections; and "temporary directional signs" in even fewer areas and during even more limited times than "political signs." *Id.* at 2224-25. These three categories of signs were also subject to different size restrictions, with temporary directional signs receiving the least favorable treatment on this aspect as well. *Id.*

The plaintiffs were a church and its pastor who wanted to post temporary signs announcing meeting times and locations for church services. *Id.* at 2225. The church owned no building, so the meetings occurred at varying locations, and signs were thus posted throughout town. *Id.* The church was twice cited for posting signs outside the narrow time limits afforded to temporary directional signs (which limits did not

3

apply to, for instance, ideological signs). *Id.* The sign code thus treated the plaintiffs' signs more restrictively than other signs based entirely on the signs' content.

Accordingly, focusing on those three categories, the Court held that the sign code was content-based "on its face." *Id.* at 2227. The six-justice majority explained that strict scrutiny applies to content-based laws, i.e., "those that target speech based on its communicative content." *Id.* at 2226; *see id.* at 2227 (explaining that government regulation is content-based "if [the] law applies to particular speech because of the topic discussed or the idea or message expressed" or if it "defin[es] regulated speech by its function or purpose").

The town's code was facially content-based because its restrictions "depend[ed] entirely on the communicative content of the sign" at issue. *Id.* at 2227. Specifically, the church's "signs inviting people to attend its worship services are treated differently from signs conveying other types of ideas." *Id.*; *see id.* at 2230 (explaining that church's signs were treated less favorably than ideological or political signs). The Court found it irrelevant that "the Town did not adopt its regulation of speech [based on] disagree[ment] with the message conveyed, and its justifications for

4

regulating temporary directional signs were unrelated to the content of the sign." *Id.* at 2227 (citation and internal quotation marks omitted) (alterations in original). That is because "an innocuous justification cannot transform a facially content-based law into one that is content neutral." *Id.* at 2228.

Because the sign code was content-based, it had to satisfy strict scrutiny. *Id.* at 2231. The Court assumed that the proffered justifications of "aesthetic appeal and traffic safety" were "compelling governmental interests," but concluded that the code's 23 categories rendered it "hopelessly underinclusive." *Id.*[1] For instance, temporary directional signs were just as aesthetically unpleasing as ideological or political ones, and temporary directional signs did not "pose a greater threat to safety than do" those other signs. *Id.* at 2231-32; *see id.* at 2232 ("If anything, a sharply worded ideological sign seems more likely to distract a driver than a sign directing the public to a nearby church meeting."); *id.* at 2239 (Kagan, J., concurring in the judgment) (writing that the sign code's

---

[1] AusPro misstates the opinion on this point, writing that the Court found the "interests" underinclusive. AusPro Supp. Br. 6, 11. Not so. Rather, the Court decided that the town had not narrowly tailored its code to further those interests. The Court did not, however, say anything to indicate that aesthetic appeal and traffic safety did not (or could not) rise to the level of "compelling" government interests.

distinctions do not satisfy "even the laugh test," because, for example, "[w]hy exactly a smaller sign better helps travelers get to where they are going is left a mystery").

Writing for himself and two other justices who joined the majority opinion, Justice Alito explained that the Court left undisturbed a number of common sign regulations that would remain content-neutral. *Id.* at 2233 (Alito, J., concurring). Most importantly, these three justices concluded that "[r]ules distinguishing between on-premises and off-premises signs" would have to satisfy only the time, place, and manner test. *Id.*; *see also id.* (writing that governments may put up "directional signs and signs pointing out historic sites and scenic spots").[2] As explained below and as Justice Alito's opinion makes clear, *Reed* leaves intact the Texas Supreme Court's conclusion in *Barber* that the Act and its ban on offsite signs survive First Amendment scrutiny.

---

[2] The three remaining justices concurred only in the judgment and would have assumed that intermediate scrutiny applied, but nevertheless invalidated the town's sign code due to "[t]he absence of any sensible basis for" the distinctions among the 23 categories of signs. *Id.* at 2239 (Kagan, J., concurring in the judgment).

6

## II. AUSPRO'S SIGN VIOLATED CONTENT-NEUTRAL RESTRICTIONS UNDER THE ACT.

### A. AusPro's Challenge Misreads The Act And *Reed*'s Effect.

AusPro's claim fails because the Act does not impose a content-based restriction on election signs. AusPro's argument to the contrary doubles down on its opening brief's misstatement on how the Act operates. AusPro writes that the election-sign exemption "singl[es] out [election] speech . . . for disparate treatment." AusPro Supp. Br. 8. That is simply not so. As the Department explained, the *exemption* does not *prohibit* anything at all. Rather, it does what exemptions do: it saves certain election signs from the general ban on signs visible from Texas highways. *See* Department Br. 17-18; TEX. TRANSP. CODE § 391.005 (providing that the Act "does not apply" to certain election speech). Crucially, if the Legislature repealed the election-sign exemption, AusPro's sign would still be illegal. The "election sign exemption challenged by AusPro," AusPro Supp. Br. 7, therefore did not cause its injury. As a result, even if *Reed* confirms *Barber*'s assessment that "the

election sign exemption is arguably content based," 111 S.W.3d at 100, AusPro's challenge still fails.[3]

What does injure AusPro is the Act's prohibition of signs "within 660 feet of the nearest edge of a right-of-way if the advertising is visible from the main-traveled way of the interstate or primary system." TEX. TRANSP. CODE § 391.031(a)(1). AusPro does not challenge that restriction, which is plainly not content-based. Accordingly, the election-sign *exemption* from that ban in no way "restricts" AusPro's speech.

Trying to place itself in the same box as the *Reed* plaintiffs—whose temporary directional signs were posted outside a time limit that would not have applied had their signs' content been "ideological"—AusPro argues that, "[i]f the sign relates to an election, the Act strictly limits the speech to a limited window," but "prohibits speech relating to elections

---

[3] AusPro's invocation of a facial challenge does not change this result because it still cannot assert an injury derived from the election-sign exemption. *See* Department Br. 19-20; *cf. Serv. Emps. Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 598 (5th Cir. 2010) (holding that, in a First Amendment facial challenge, the "plaintiff must establish injury under a particular provision of a regulation that is validly applied to its conduct, then assert 'a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court *under that provision*'" (citation omitted)). Moreover, even if AusPro could assert an overbreadth facial challenge, it has not made the necessary showing that the Act's overbreadth is "not only [] real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citation and internal quotation marks omitted).

along interstate and primary highways at all other times of the year." AusPro Supp. Br. 9. It likewise asserts that "other signs . . . are permitted to remain on display all year." *Id.* at 13. That assessment of the Act is patently wrong. As the Department again explained, and the Texas Supreme Court made clear, "the Act allows all onsite commercial speech and *all* onsite noncommercial speech" throughout the year. *Barber*, 111 S.W.3d at 99. Had AusPro's election speech pertained to activities on its premises, its sign would have complied with the Act. *See* Department Br. 24-27. AusPro's refusal to acknowledge this facet of the Act or *Barber*'s holding dooms its arguments.

The difference between AusPro's position and the challengers' in *Reed* is stark. In *Reed*, the sign code contained impermissible content-based exemptions that treated other signs more favorably than the challengers', based solely on the content of the challengers' signs. Here, as explained, the election-sign exemption does not treat any type of content more favorably than AusPro's content. Accordingly, unlike in *Reed*, a content-based restriction does not harm AusPro. Its sign is illegal not because it is election speech but because of its location, i.e., "within 660 feet of the nearest edge of a right-of-way if the advertising is visible

from the main-traveled way of the interstate or primary system." TEX. TRANSP. CODE § 391.031(a)(1). Again, even without the challenged exemption in section 391.005, AusPro's sign would remain illegal. By contrast, if the plaintiffs' signs in *Reed* had been, for instance, "ideological signs," their signs would have been permitted in all zoning districts at all times of the year. 135 S. Ct. at 2224. A content-based distinction therefore harmed the *Reed* plaintiffs in a way that the election-speech exemption does not harm AusPro.

Notably, AusPro does not appear to challenge the Act's onsite/offsite distinction as content-based. *See, e.g.*, AusPro Supp. Br. 7 (arguing only that election-sign exemption is content-based regulation and referring to "election sign exemption challenged by AusPro"). That choice is prudent, for such a challenge would fail. *Barber* held that the onsite-sign exemption "regulates signs based on their location," not their content. 111 S.W.3d at 102; *see also id.* at 101 (discussing cases). And, as discussed above, *Reed* does not undermine that holding. *See Reed*, 135 S.

Ct. at 2233 (Alito, J., concurring) (concluding that rules distinguishing between offsite and onsite signs are content-neutral).[4]

Likewise, AusPro's targeted complaint about the election-sign exemption also does not appear to contest the Act's other limited exemptions, which pertain either to onsite activities, directions, or safety. *See* TEX. TRANSP. CODE 391.031(b); *cf.* AusPro Supp. Br. 14 (arguing that "[t]he election sign exemption is not narrowly tailored" but not making similar argument about other exemptions).[5] In dicta, the *Reed* majority all but announced that signs "to guide traffic or to identify hazards and ensure safety" would survive. 135 S. Ct. at 2232 (majority op.). And

---

[4] Admittedly, *Reed* may invalidate one of *Barber*'s alternative rationales for finding that the Act was content neutral. The Texas Supreme Court wrote that "the Act is *also* content neutral because it is '*justified* without reference to the content of the regulated speech.'" *Barber*, 111 S.W.3d at 100 (first emphasis added) (citation omitted)). After *Reed*, an innocuous purpose cannot save a facially content-based statute from strict scrutiny. But to the extent that *Barber* was merely indicating that the Act did not discriminate in its purpose, *as well as* not discriminating on its face, that analysis remains appropriate under *Reed*. In all events, AusPro has not suggested the Legislature's purpose was improper, and the Act is facially content neutral under *Barber* because it regulates signs based on their location.

[5] AusPro vaguely states, without discussion or analysis, that "the Act 'does make certain distinctions based on subject matter,' such as the exemptions for directional signs, signs relating to natural wonders or historic attractions, and election signs." AusPro Supp. Br. 9 (quoting *Barber*, 111 S.W.3d at 98). This conclusory assertion does not raise a challenge based on those other exemptions, *cf.* TEX. R. APP. P. 38.1(i), and is inconsistent with AusPro's assertion of a challenge to the election-sign exemption, full stop.

Justice Alito's concurrence similarly determined that the majority opinion does not cast doubt on the constitutionality of "all manner of signs to promote safety, as well as directional signs and signs pointing out historic sites and scenic spots." *Id.* at 2233 (Alito, J., concurring). This result is eminently reasonable. The First Amendment does not force state and local governments to choose between allowing all types of signs or prohibiting all types of signs, including, for instance, those for the protection of life and property.[6] The Constitution is not so inflexible.

## B. Even If AusPro Could Successfully Challenge Section 391.005's Election-Sign Exemption, The Proper Remedy Would Be To Invalidate Only That Section.

AusPro suggests that "[b]ecause [it] raised both facial and as-applied challenges," the Court has the "option[]" to "broadly" strike down the Act and its regulations as a whole. AusPro Supp. Br. 18. That is not accurate, for Texas law presumes severability. *Geeslin v. State Farm*

---

[6] Admittedly, the majority's and concurrence's conclusions may be in some tension with older decisions suggesting that traffic safety is not a compelling interest. *See, e.g.*, AusPro Appellant's Br. 44 (citing *McCormack v. Twp. of Clinton*, 872 F. Supp. 1320, 1325 (D.N.J. 1994)). *But see, e.g.*, *Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 797-98 (S.D. Tex. 2013) ("According to the City, the primary government interests in enforcing this statute against day laborers are to promote traffic safety and control. Public safety is a compelling interest at the heart of government's function." (citing *Houston Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 622 (5th Cir. 2007)). Those decisions, however, would have to be reconsidered in light of *Reed*.

*Lloyds*, 255 S.W.3d 786, 797 & n.4 (Tex. App.—Austin 2008, no pet.); *see* TEX. GOV'T CODE 311.032(c) ("[I]f any provision of the statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable."); *cf. Voting for Am., Inc. v. Steen*, 732 F.3d 382, 398 (5th Cir. 2013) (noting Texas's "strong severability statute").[7] "When a part of a statutory scheme is unconstitutional, a court should—where possible—sever out the unconstitutional aspects and save the balance of the scheme." *Geeslin*, 255 S.W.3d at 797. This Court described the severability inquiry as one into legislative intent:

> When, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, dependent on each other, operating together for the same purpose, or otherwise so connected in meaning that it cannot be presumed the legislature would have passed the one without the other. . . . If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and

---

[7] Severing is appropriate even in the First Amendment context. *See, e.g.*, *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 501, 506 & n.14 (1985); *cf. Covenant Media LLC v. City of N. Charleston*, 493 F.3d 421, 438 (4th Cir. 2007) (noting "principle that invalidating a whole statute may nullify more of the work of the people's elected representatives than is constitutionally necessary").

> capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must stand.

*Id.* at 797 (quoting *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 844 (Tex. 1990)).

AusPro has not argued that severability is impermissible here. Far from it, AusPro concedes that "the Court could simply strike down the election sign exemption contained in the Act and its regulations and leave the rest of the Act and the regulations intact." AusPro Supp. Br. 18. The Department agrees that, should the Court find that section 391.005 violates strict scrutiny, it should invalidate only that section and leave the remainder intact.

Indeed, there is no basis for striking down the entire Act. The Act easily operates as a coherent whole without section 391.005. It fully specifies how signs are regulated without depending on the election-sign exemption. The only difference would be that some signs that were permissible during the 100 days around an election would now be banned. But the Legislature would obviously prefer that scenario to one in which all signs can be posted in all areas at all times. *See, e.g., Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1348 (11th Cir.

14

2004) (rejecting facial challenge because "it [is] wholly implausible that the City would have preferred no sign ordinance at all to one that contains all the current parts of the Amended Sign Code other than the suspect content regulations"); TEX. TRANSP. CODE § 391.002(b) (legislative declaration that the Act "is necessary . . . to: (1) promote the health, safety, welfare, morals, convenience, and enjoyment of the traveling public; and (2) protect the public investment in the interstate and primary systems"); *Barber*, 111 S.W.3d at 103 ("[A]esthetics and public safety on the highway are recognized as substantial governmental goals.").

That conclusion is confirmed by the fact that section 391.005 was not added until two years after the Legislature passed the Act. *See* Act of Apr. 25, 1997, 75th Leg., R.S., ch. 60, § 1, 1997 Tex. Gen. Laws 129, 129. This shows that the Act (unsurprisingly) functions without the exemption. The limited remedy of invalidating section 391.005 is thus the only permissible one.

By contrast, AusPro's request for facial invalidation asks the Court to nullify the entire Act based on the arguably content-based nature of a single, narrow exemption that does not matter one whit to AusPro's

conduct. If the Court does not reject AusPro's free-speech challenge, it should therefore craft an appropriately narrow judicial remedy by invalidating only section 391.005 (and the corresponding administrative regulation 43 TEX. ADMIN. CODE § 21.146(a)(9)).[8]

## III. *REED* IS WHOLLY IMMATERIAL TO AUSPRO'S PRIOR-RESTRAINT CHALLENGE.

AusPro also could have complied with the Act by obtaining a license and permit for its sign. *See* TEX. TRANSP. CODE §§ 391.061, .067; Department Br. 34-35. On appeal, AusPro argued that these licensing and permitting regulations comprised unconstitutional prior restraints. The Department contended that AusPro forfeited this challenge by omitting it in the trial court and that the challenge was meritless. In its Supplemental Brief, AusPro addresses only the forfeiture argument. But *Reed* could not possibly touch on Texas's rules for preserving claims in the trial court. Although this Court's order permitted supplemental briefing solely to "address[] the effect of the *Reed* opinion on this appeal,"

---

[8] *Reed* did not consider severability. But the sign code there, with its 23 separate categories imposing myriad, varied restrictions, likely would have been more difficult to parse than the mere excision of the later-enacted section 391.005. Moreover, there is no indication that the town's sign code had a severability presumption similar to Texas Government Code section 311.032(c).

Mem. Op. 2, Apr. 29, 2015 (order abating appeal and granting supplemental briefing), the Department will respond so that the Court has full briefing on the waiver issue.

The Department explained that a prior-restraint challenge fundamentally differs from an absolute ban on speech and that, in the trial court, AusPro never raised a prior-restraint challenge nor cited a single licensing or permitting regulation. Department Br. 35-37; *cf. id.* at 44-45 (explaining how AusPro's failure prejudices the Department on appeal). AusPro responds that it "has every right to challenge TxDOT's licensing and permitting regime because it was prosecuted civilly for failure to comply with it." AusPro Supp. Br. 16. The Department agrees. But to challenge the licensing and permitting scheme, AusPro had to actually challenge the licensing and permitting scheme. The point is that AusPro failed to do so until its opening brief on appeal. Yet raising these arguments for the first time on appeal plainly does not satisfy Appellate Rule 33.1(a) or this Court's precedents on waiver. *See* Department Br. 35-37.

Attempting to cure that deficiency, AusPro proclaims that "[w]ithout question" it did indeed raise a prior-restraint claim by

asserting "that 'the statutes and regulations on which [the Department] relies violate AusPro's right to free speech' on their face and as applied under the First Amendment and the Texas Constitution." AusPro Supp. Br. 17 (citation omitted). That is far too vague and broad a statement to put the Department and trial court on notice of a prior-restraint challenge, which involves a different legal test and different facts.

Regardless, AusPro's prior-restraint challenge is meritless. *See* Department Br. 37-45. The Department's arguments to that effect rested largely on AusPro's misinterpretation of the licensing and permitting regulations. *Reed*, needless to say, had no occasion to address Texas's regulations under the Act. That decision therefore has no effect on this part of AusPro's appeal.

## IV. *REED* ALSO HAS NO BEARING ON ANY INDEPENDENT PROTECTION AFFORDED BY THE TEXAS CONSTITUTION.

AusPro's Supplemental Brief discusses its complaint under the Texas Constitution, even though (as AusPro implicitly concedes) the U.S. Supreme Court could not possibly have anything to say about Texas's Constitution.

On the merits of this complaint, AusPro offers nothing to rehabilitate the deficiencies identified by the Department's principal

18

brief. Instead, it resorts to baseless allegations, falsely asserting that the Department is "tr[ying] to dodge the Texas Constitution." AusPro Supp. Br. 19. To the contrary, the Department merely wants AusPro to comply with Texas Supreme Court precedent requiring a litigant to explain *why* the Texas Constitution offers greater protection than its federal counterpart, rather than resting on the litigant's mere say-so. *See, e.g.*, *Kinney v. Barnes*, 443 S.W.3d 87, 92 (Tex. 2014) ("'Article I, Section 8 *may* be more protective of speech in some instances than the First Amendment, but if it is, it must be because of the text, history, and purpose of the provision, not just simply *because*.'" (quoting *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 559 (Tex. 1998)); Department Br. 46-47. AusPro evidently is unable to do so. Its challenge must fail.

## PRAYER

The judgment of the district court should be affirmed.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

SCOTT A. KELLER
Solicitor General

   /s/ Douglas D. Geyser
DOUGLAS D. GEYSER
Assistant Solicitor General
State Bar No. 24059817

MATTHEW BOHUSLAV
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-2540
Fax: (512) 474-2697
*douglas.geyser@texasattorneygeneral.gov*

COUNSEL FOR APPELLEE
TEXAS DEPARTMENT OF TRANSPORTATION

20

**CERTIFICATE OF SERVICE**

On August 19, 2015, the foregoing brief was served via File &

ServeXpress and e-mail on:

Meredith B. Parenti
PARENTI LAW PLLC
P.O. Box 19152
Houston, Texas 77224
[Tel] (281) 224-5848
[Fax] (281) 605-5677
meredith@parentilaw.com

*Counsel for Appellant AusPro Enterprises, LP*


 /s/  Douglas D. Geyser
Douglas D. Geyser

**CERTIFICATE OF COMPLIANCE**

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this

brief contains 3,895 words, excluding the portions of the brief exempted

by Rule 9.4(i)(1).


 /s/  Douglas D. Geyser
Douglas D. Geyser