ACCEPTED
03-14-00375-CV
7279584
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/7/2015 5:12:18 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00375-CV

# In the
# Third Court of Appeals
# Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/7/2015 5:12:18 PM
JEFFREY D. KYLE
Clerk

_____

AUSPRO ENTERPRISES, LP,

*Appellant*,

v.

TEXAS DEPARTMENT OF TRANSPORTATION,

*Appellee*.

_____

On Appeal from the 345th Judicial District Court of
Travis County, Texas

_____

**APPELLANT AUSPRO ENTERPRISES, LP'S SUPPLEMENTAL REPLY BRIEF ON
*REED V. TOWN OF GILBERT***

_____

Meredith B. Parenti
State Bar No. 00797202
PARENTI LAW PLLC
7500 San Felipe, Suite 600
Houston, Texas 77063
[Tel] (281) 224-5848
[Fax] (281) 605-5677
meredith@parentilaw.com
*Counsel for Appellant*
*AusPro Enterprises, LP*

**ORAL ARGUMENT REQUESTED**

**IDENTITIES OF PARTIES AND COUNSEL**

The following is a complete list of the parties, attorneys, and any other person who has any interest in the outcome of this appeal.

**Defandant/Appellant:**

AusPro Enterprises, LP

**Counsel for Defendant/Appellant:**

Meredith B. Parenti
State Bar No. 00797202
PARENTI LAW PLLC
7500 San Felipe, Suite 600
Houston, Texas 77063
[Tel] (281) 224-5848
[Fax] (281) 605-5677
meredith@parentilaw.com

**Plaintiff/Appellee:**

Texas Department of Transportation

**Counsel for Plaintiff/Appellee:**

Douglas Geyser
Assistant Solicitor General
Matthew Bohuslav
Assistant Attorney General, Transportation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
[Tel] (512) 936-2540
[Fax] (512) 472-3855
douglas.geyser@texasattorneygeneral.gov
matthew.bohuslav@texasattorneygeneral.gov

# TABLE OF CONTENTS

Identity of Parties and Counsel ............................................................................. i

Table of Authorities ....................................................................................... iii

Argument ...................................................................................................... 1

    A.    What TxDOT Does Not Argue Speaks Volumes ................................... 1

    B.    A Ban That Is Selectively Lifted Is Still a Content-Based Regulation of Speech ................................................................................. 3

    C.    *Barber* Is Not Controlling ....................................................... 9

    D.    The Court May Reach the Constitutionality of the Entire Act and Its Regulations in This Facial Challenge ................................... 10

    E.    The On-Premises Activities Exemption Regulates Signs Based on Their Content ....................................................................... 14

    F.    The Act Cannot Survive Strict Scrutiny ...................................... 18

Prayer ....................................................................................................... 21

**Cases**

*Boos v. Barry*,
485 U.S. 312 (1988) ................................................................................. 18

*Burson v. Freeman*,
504 U.S. 191 (1992) ............................................................................ 18, 19

*Carey v. Brown*,
447 U.S. 455 (1980) ................................................................................3-4

*Citizens United v. Federal Election Commission*,
130 S.Ct. 876 (2010) ............................................................................... 11

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993) ................................................................................. 3

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994) ........................................................................ 4, 16, 17

*City of Renton v. Playtime Theatres, Inc.*,
475 U.S. 41 (1986) ................................................................................. 10

*FCC v. League of Women Voters*,
468 U.S. 364 (1984) ................................................................................ 15

*Geeslin v. State Farm Lloyds*,
255 S.W.3d 786 (Tex. App.—Austin 2008, no pet.).................................. 12

*Linmark Assocs., Inc. v. Township of Willingboro*,
431 U.S. 85 (1977) ................................................................................... 5

*McCullen v. Coakley*,
573 U.S. __, 134 S.Ct. 2518 (2014) ..................................................... 14, 15

*Members of City Council v. Taxpayers for Vincent*,
466 U.S. 789 (1984) ................................................................................ 17

*Metromedia Inc. v. City of San Diego*,
    453 U.S. 490 (1981) ................................................................. 3, 4, 15

*Pleasant Grove City v. Summum*,
    555 U.S. 460 (2009) ....................................................................... 5

*Police Dep't of Chicago v. Mosley*,
    408 U.S. 92 (1972) .......................................................................... 4

*Reed v. Town of Gilbert*,
    576 U.S. __, 135 S.Ct. 2218 (2015) ..................................... *passim*

*Ry. Express Agency, Inc. v. New York*,
    336 U.S. 106 (1949) ...................................................................... 17

*Texas Department of Transportation v. Barber*,
    111 S.W.3d 86 (Tex. 2003) ................................................... *passim*

*Union City Bd. of Zoning Appeals v. Justice Outdoor Displays, Inc.*,
    467 S.E.2d 875 (Ga. 1996) .............................................................. 4

*United States v. Playboy Entm't Grp., Inc.*,
    529 U.S. 803 (2000) ............................................................... 18, 20

**Statutes, Regulations, & Constitutional Provisions**

43 TEX. ADMIN. CODE §§21.141–.260 ................................................. 13

43 TEX. ADMIN. CODE §21.143(1) ........................................................ 7

43 TEX. ADMIN. CODE §21.146 ............................................................ 13

43 TEX. ADMIN. CODE §21.146(a)(9) .................................................... 7, 8

43 TEX. ADMIN. CODE §21.146(a)(10) ............................................. 7, 8, 16

43 TEX. ADMIN. CODE §21.147 ............................................................ 13

43 TEX. ADMIN. CODE §21.147(a) ........................................................ 16

43 TEX. ADMIN. CODE §21.148 ............................................................ 13

iv

43 TEX. ADMIN. CODE §21.149 .................................................................. 13

TEX. TRANSP. CODE §200.001(a)(1) ...................................................... 6

TEX. TRANSP. CODE §391.001 ........................................................ 5, 13

TEX. TRANSP. CODE §391.001(12) .................................................. 5, 12

TEX. TRANSP. CODE §391.005 ..................................................... 5, 7, 12

TEX. TRANSP. CODE §391.031(b)(1) ................................................... 5

TEX. TRANSP. CODE §391.031(b)(2) ................................................... 5

TEX. TRANSP. CODE §391.031(b)(3) ............................................. 5, 14

TEX. TRANSP. CODE §391.031(b)(4) ................................................... 6

TEX. TRANSP. CODE §391.031(b)(5) ................................................... 5

TEX. TRANSP. CODE §391.031(b)(6) ................................................... 6

TEX. TRANSP. CODE §391.032 ............................................................ 6

TEX. TRANSP. CODE §391.037 ...................................................... 6, 12

TEX. TRANSP. CODE §391.091 ............................................................ 5

TEX. TRANSP. CODE §391.099 ....................................................... 6, 7

TEX. TRANSP. CODE §391.0935 ......................................................... 6

TEX. TRANSP. CODE §394.001 ............................................................ 6

TEX. TRANSP. CODE §394.003 ............................................................ 6

TEX. CONST. art. I, §8 ....................................................................... 20

TEX. CONST. art. I, §29 ..................................................................... 20

U.S. CONST. amend. I......................................................................... 20

**Other Authorities**

Fallon, *As-Applied and Facial Challenges and Third-Party Standing*,
113 HARV. L. REV. 1321 (2000) ................................................................. 11

To the Honorable Third Court of Appeals:

The Supreme Court's decision in *Reed v. Town of Gilbert*, 576 U.S. __, 135 S.Ct. 2218 (2015), thoroughly repudiated TxDOT's reasoning in defense of the Texas Highway Beautification Act. None of TxDOT's arguments can obscure that the Act regulates signs based on their content. Indeed, the Texas Supreme Court previously recognized in *Texas Department of Transportation v. Barber*, 111 S.W.3d 86, 98 (Tex. 2003), that the Act makes distinctions based on subject matter, although it erroneously held that intermediate scrutiny should apply and that the Act was supported by a content-neutral justification. *Reed* rejected that reasoning and held that strict scrutiny applies to any regulation of speech based on its content, regardless of the justification for it. Applying the plain reasoning in *Reed*, the Court should hold that the Act and its implementing regulations are content based and cannot survive strict scrutiny.

## ARGUMENT

### A.     What TxDOT Does Not Argue Speaks Volumes.

As an initial matter, what TxDOT has *not* argued in its supplemental response brief demonstrates that the Supreme Court in *Reed* rejected every major argument previously proffered by TxDOT:

1

- TxDOT no longer argues the Act is a valid time, place, and manner restriction, as the Texas Supreme Court held in *Barber*. *See* AusPro Supp. Br. at 9-11; Appellee's Br. at 11-13.

- TxDOT no longer argues that the Act is aimed at the secondary effects of billboards along state highways. *See* AusPro Supp. Br. at 11; Appellee's Br. at 28-29.

- TxDOT does not argue that the Act is narrowly tailored to further a compelling state interest. *See* AusPro Opening Br. at 42-49; AusPro Supp. Br. at 11-15; Appellee's Br. at 32-34 (arguing the Act is narrowly tailored to further "substantial" government interests).

- TxDOT does not make the case that aesthetics and traffic safety are compelling governmental interests. It merely notes that the Court in *Reed* assumed without deciding that they were, but held that the Gilbert sign code was hopelessly underinclusive. Appellee's Supp. Br. at 5 & n.1; Appellee's Br. at 2, 16, 32.

- TxDOT does not argue that election signs or other topics of speech singled out by the Act pose a greater traffic hazard than other signs permitted along the Act's corridor. *See* AusPro Supp. Br. at 14.

The decision in *Reed* shakes the foundation of the Texas Highway Beautification Act and the Texas Supreme Court's decision upholding it in *Barber*.

2

**B.** **A Ban That Is Selectively Lifted Is Still a Content-Based Regulation of Speech.**

TxDOT suggests that the Act operates as a benign, content-neutral ban on signs that actually favors speech relating to elections by exempting it for a limited time from the Act's complete ban on signs. Appellee's Supp. Br. at 1-2, 7. Whether the exemption favors or disfavors election-related speech is not the question, however. *See Reed*, 135 S.Ct. at 2228 ("A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)).

Instead, the threshold question is whether the regulation of speech is content based. *Reed*, 135 S.Ct. at 226-27; AusPro Opening Br. at 13-14; AusPro Supp. Br. at 10. A ban that is selectively lifted for certain subjects is still a content-based regulation of speech. *See, e.g., Discovery Network*, 507 U.S. at 429 (holding Cincinnati's "sweeping ban on the use of newsracks that distribute 'commercial handbills,' but not 'newspapers'" was content based); *Metromedia Inc. v. City of San Diego*, 453 U.S. 490, 494-96, 516 (1981) (plurality) (holding San Diego ordinance prohibiting all outdoor signs except onsite commercial signs, government signs, historical plaques, religious symbols, for sale signs, and other specific categories of commercial signs, was content-based); *Carey v. Brown*, 447

3

U.S. 455, 457, 460-63 (1980) (holding ban on all picketing that exempted labor picketing was content based); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 92-93, 95-98 (1972) (same). In fact, most sign regulations operate this way, by banning all signs and then lifting the ban for certain topics deemed worthy. *See, e.g., City of Ladue v. Gilleo*, 512 U.S. 43, 45-46 (1994) (considering ordinance that prohibited homeowners from displaying any signs on their property except 'residence identification' signs, 'for sale' signs, and signs warning of safety hazards); *Metromedia*, 453 U.S. at 493-96 (considering ordinance exempting certain signs from ban); *Union City Bd. of Zoning v. Justice Outdoor Displays, Inc.*, 467 S.E.2d 875, 882 (Ga. 1996) (considering exception to general ban on signs for election signs).

The Gilbert sign code invalidated in *Reed* was no different in this respect. The Town of Gilbert prohibited outdoor signs from being displayed anywhere in town without a permit, but then exempted 23 categories of signs from the ban, including ideological signs, political signs, and temporary directional signs relating to qualifying events. 135 S.Ct. at 2224-25. Texas's Highway Beautification Act takes a similar approach by prohibiting outdoor advertising from being displayed anywhere within the corridor along state highways and interstates without a license and permit, but then exempting at least 26 categories of signs based on their subject matter:

4

- 5 categories of specific information logo signs imprinted with the words "GAS," "FOOD," "LODGING," "CAMPING," or "24 HOUR Rx," TEX. TRANSP. CODE §§391.001(12), .091

- signs relating to a public election, §391.005; App. D

- 6 categories of signs relating to

  - directional or official advertising authorized by law, including advertising pertaining to a natural wonder or a scenic or historic attraction, §391.031(b)(1); App. J [1]

  - for sale or lease signs for the property on which it is located, §391.031(b)(2); App. J [2]

  - signs "solely for activities conducted on the property on which it is located," §391.031(b)(3); App. J [3]

  - signs for protection of life and property, §391.031(b)(5); App. J [4]

---

[1] This exemption does not offend the First Amendment to the extent it regulates government speech. *Reed*, 135 S.Ct. at 2233; *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-69 (2009) ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech.").

[2] *Cf. Linmark Assocs., Inc. v. Township of Willingboro*, 431 U.S. 85, 94, 97 (1977) (holding that an ordinance prohibiting "for sale" and "sold" signs was based on their content and violated the First Amendment). Such signs would be permitted if the State enacted a content-neutral, on-premises restriction allowing owners to display signs on their own premises. *See infra* Part E.

[3] This exemption is content based because a government official must review the content of the sign to determine if it is compliant. *See infra* Part E.

[4] Signs for the protection of life and property would be supported by a compelling government interest.

- signs erected before October 22, 1965 that the commission, with the approval of the secretary of the United States Department of Transportation, determines to be a landmark of historic or artistic significance, §391.031(b)(6); App. J[5]

- 3 categories of signs related to certain county agricultural fairs, §391.037; App. M

- major shopping area guide signs, §391.0935[6]

- 3 categories of tourist-oriented directional signs that identify a winery or business related to agriculture or tourism, §391.099; App. N

- 7 categories of exemptions for signs on rural roads that duplicate the above provisions, §§394.001, .003

Just as in *Reed*, the Act makes content-based distinctions in determining which signs are exempted from the general ban on signs. 135 S.Ct. at 2224, 2227. As the Court explained in *Reed*, "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227. That is exactly what the Act does. Its

---

[5] This provision is impermissible because it allows the government, in the form of the Texas Transportation Commission and the U.S. Department of Transportation, to approve speech. *See* TEX. TRANSP. CODE §201.001(a)(1) (defining the "commission" as the Texas Transportation Commission).

[6] These signs could still be permissible under the Act's provisions allowing signs of any kind to be displayed in commercial or industrial areas. *See* TEX. TRANSP. CODE §§391.031(b)(4), .032; App. J.

exemptions look to the topic of the sign to determine if it is permitted. For example, signs are permitted if they relate to topics deemed acceptable to the State: public elections, wineries, agriculture, and tourism, to name a few. TEX. TRANSP. CODE §391.005; App. D; §391.099; App. N.

Undaunted, TxDOT argues that "if the Legislature repealed the election sign exemption, AusPro's sign would still be illegal." Appellee's Supp. Br. at 7. Thus, TxDOT argues that even if the exemption is content based, it did not cause AusPro injury, which was caused by the general ban on signs. Appellee's Supp. Br. at 7-8 & n.3. Yet the only reason AusPro's sign was deemed "illegal" by TxDOT was because it was an election sign posted outside of the 100-day window in which election signs are permitted by the exemption. Shortly after AusPro put up its sign, TxDOT sent AusPro a notice that the sign was an "illegal sign" under 43 TEX. ADMIN. CODE §§21.143(1) and 21.146(a)(9), the latter being the regulatory exemption for election signs,[7] because it did not have a permit and the sign "was being maintained outside the timeframe which would allow it to be exempt." CR10, 53, 59. TxDOT's notice also explained that the Texas Administrative Code requires all outdoor advertising signs to have a permit, but "allows an exemption from this rule for campaign signs, but only in the 90 days before the election and

---

[7] Section 21.143(1) refers to the general ban on signs along highways, while §21.146(a)(9) specifically applies to election signs. App. E (current version at 43 TEX. ADMIN. CODE §21.146(a)(10)); AusPro Opening Br. at 16 n.4.

10 days after the election." CR59. Similarly, TxDOT's petition suing AusPro alleged that AusPro's sign "is a campaign sign that falls outside the allotted time frame for exempted campaign signs—90 days before the election and 10 days after the election." CR4 (citing 43 TEX. ADMIN. CODE §21.146(a)(9)). The parties' Agreed Stipulated Facts filed at trial also recounted TxDOT's singular focus on the election sign exemption in citing AusPro for a violation of the Act, and noted that TxDOT's notice to AusPro failed to "specify the date of the election that would determine the exempt timeframe for signs relating to a public election." CR53-54. TxDOT's motion for summary judgment stated that "[t]he exemption relevant to this case exempts signs that 1) relate only to a public election . . . ." CR19 (citing 43 TEX. ADMIN. CODE §21.146(a)(10)), and AusPro's trial brief cited the same provision, arguing that "the Act's restriction on election signs violates Auspro's free speech rights," CR62. Finally, the trial court's final judgment held that AusPro's sign did not meet the exemption criteria for election signs in §21.146(a)(9). CR107; App. A at 1. Thus, the durational limitation in the election sign exemption obviously harmed AusPro, which was ordered to pay a civil penalty for its noncompliance. CR108; App. A at 2.

In addition, as AusPro has previously shown, the election sign exemption looks to the content of the sign to determine how long it may be displayed, and then discriminates against election-related speech by severely limiting its duration

compared to other types of commercial and noncommercial speech permitted year-round. *See* AusPro Opening Br. at 17-21 & n.5; AusPro Supp. Br. at 12-15. This also harms AusPro.

If TxDOT's tortured logic were correct, then the Supreme Court should have never decided *Reed* because petitioners would have been harmed only by the content-neutral general ban on signs, rather than by the content-based exemption their signs failed to satisfy because they were posted outside of its durational limitations. *See Reed*, 135 S.Ct. at 2225 (explaining that exemption affecting petitioners could be "displayed no more than 12 hours before the 'qualifying event' and no more than 1 hour afterward" and petitioners were cited for "exceed[ing] the time limits" for displaying their signs). Nor should the Supreme Court have decided any other case in its history involving a general ban on speech and content-based exemptions. *See supra* Part I.B (discussing cases). Fortunately, this is not the law.

C. *Barber* **Is Not Controlling.**

TxDOT continues to maintain that *Barber*, 111 S.W.3d 86, is controlling, Appellee's Supp. Br. at 2, notwithstanding that the decision rested on reasoning expressly rejected by the Court in *Reed*. *See* AusPro Supp. Br. at 9-11. Indeed, TxDOT itself has abandoned the primary reasoning on which the *Barber* court relied, including its central holding that the Act is a time, place, and manner

9

restriction subject to intermediate scrutiny, despite making content-based distinctions. 111 S.W.3d at 89, 98, 100-01. The court recognized in *Barber* that the Act "does make certain distinctions based on subject matter," such as the exemptions for directional signs relating to natural wonders, scenic or historic attractions, and election signs, but it nevertheless held that it was "content neutral because it is '*justified* without reference to the content of the regulated speech.'" 111 S.W.3d at 98 (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986)). As TxDOT now concedes, *Reed* rejected this reasoning, holding that a "[i]nnocent motives do not eliminate the danger of censorship presented by a facially content-based statute." 135 S.Ct. at 2229; Appellee's Supp. Br. at 11 n.4 ("After *Reed*, an innocuous purpose cannot save a facially content-based statute from strict scrutiny."); AusPro Supp. Br. at 10-11.

What is left of *Barber* after *Reed* is unclear from TxDOT's brief. What is clear is that applying *Reed* to the Texas Supreme Court's conclusion that the Act "make[s] certain distinctions based on subject matter," *Barber*, 111 S.W.3d at 98, there is no doubt that those distinctions are content based and strict scrutiny must be applied.

**D.     The Court May Reach the Constitutionality of the Entire Act and Its Regulations in This Facial Challenge.**

TxDOT also attempts to limit AusPro's challenge to the election sign exemption alone, arguing incorrectly that AusPro "does not appear to contest the

Act's other limited exemptions." Appellee's Supp. Br. at 11, 7. AusPro asserted both facial and as-applied challenges to the Act, and preserved both throughout this litigation. CR14, 63; AusPro Opening Br. at 13; AusPro Supp. Br. at 18.[8] Moreover, AusPro specifically took issue with the Act's other exemptions, arguing they impermissibly favored some topics of speech over others. CR66; AusPro Opening Br. at 27-28; AusPro Supp. Br. at 14.[9] AusPro also challenged the Act's on-premises exemption "because the content of speech must be examined to determine whether it relates to on-site activities or is otherwise permissible under the Act." CR66 (quoting *Barber*, 111 S.W.3d at 109 (Owens, J., dissenting)); *see infra* Part E (discussing the on-premises exemption in greater detail).

Given the Texas Supreme Court's decision in *Barber*, this Court could not have revisited its reasoning until now. But *Reed* makes clear that the Act and its implementing regulations are constitutionally infirm to the extent they make

---

[8] Regardless, as AusPro pointed out in its opening brief, AusPro Opening Br. at 13 n.2, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 130 S.Ct. 876, 893 (2010) (citing Fallon, *As-Applied and Facial Challenges and Third-Party Standing*, 113 HARV. L. REV. 1321, 1339 (2000) ("[O]nce a case is brought, no general categorical line bars a court from making broader pronouncements of invalidity in properly 'as-applied' cases")).

[9] *See, e.g.,* AusPro Opening Br. at 27-28 (listing exemptions in TEX. TRANSP. CODE §§391.031(b)(1), (2), (3), (5), .037, .099 and stating that "[s]igns containing these topics of commercial and noncommercial speech receive favored status compared to election signs because they may remain posted year-round"). Even TxDOT admits that "[e]xemptions that do not cover the plaintiff are without doubt pertinent to free-speech challenges because they might undermine the argument that the statute's restrictions are not justified without reference to the content of the restricted speech." Appellee's Br. at 18-19.

11

content-based distinctions. The Act's other content-based exemptions are squarely presented to the Court. Like the sign code invalidated in *Reed*, the Act is content-based on its face, subjecting the entire statutory and regulatory scheme to strict scrutiny. 135 S.Ct. at 2227.

TxDOT's argument that the election sign exemption could be severed from the Act, leaving the other exemptions intact, ignores that the Act's other content-based exemptions are also unconstitutional on their face. Appellee's Supp. Br. at 12-16. These other content-based exemptions are squarely before the Court and should be addressed in light of the broad holding in *Reed.* Of course, severability principles would apply to preserve the Act's non-content-based provisions. *See Geeslin v. State Farm Lloyds*, 255 S.W.3d 786, 796-97 (Tex. App.—Austin 2008, no pet.) (noting that the parties had "challenged no other provision, and we have neither addressed nor found constitutional infirmities in the remainder of the statute").

While, at a minimum, the election sign exemption should be held unconstitutional, the Court also should more broadly hold in accordance with *Reed* that the Act and its regulations are content-based to the extent they regulate signs based on their subject matter. Although the specific provision applicable to petitioners in *Reed* was the durational limitation on temporary directional signs, the Court also invalidated the sign code's other content-based provisions, including its

12

durational limitation on political signs, which, much like the Texas election sign exemption, permitted them to be displayed 60 days before a primary election and up to 15 days after a general election. *See* AusPro Supp. Br. at 14. So, too, this Court should not turn a blind eye to the other obviously content-based provisions in the Act and its implementing regulations.

Specifically, applying *Reed*, the Court should hold unconstitutional the exemptions noted above because they regulate signs based on their content and are not narrowly drawn to promote a compelling governmental interest. *See supra* Part B, *infra* Part E. TxDOT's implementing regulations for these provisions should also be held to be impermissibly content based, including 43 TEX. ADMIN. CODE §21.146 (various exempt signs), App. E; §21.147 (on-premises signs), App. P; §§21.148, .149 (nonprofit signs), App. Q, R. AusPro has preserved its challenge to these provisions throughout this litigation and on appeal, CR14, AusPro Opening Br. at 16-17, 27, 28, 56-58, and the trial court held they are not unconstitutional, CR107; App. A at 1 (upholding Act and implementing regulations in 43 TEX. ADMIN. CODE §§21.141–.260).

The Court should address all of these obvious content-based restrictions in the Act and its implementing regulations not only because the reasoning in *Reed* compels it, but in order to provide guidance to general public and to the Legislature and TxDOT, which will need to revisit the Act and its implementing regulations in

light of *Reed.* While there may be other provisions contained in the Act and TxDOT's regulations interpreting it that are also content based, the Legislature and TxDOT can reexamine those once this Court issues its decision.[10]

### E. The On-Premises Activities Exemption Regulates Signs Based on Their Content.

TxDOT clings to the statement in Justice Alito's concurring opinion, joined by Justices Kennedy and Sotomayor, that certain sign regulations would not be content based, including "[r]ules distinguishing between on-premises and off-premises signs." 135 S.Ct. at 2233 (Alito, J., concurring); TxDOT Supp Br. at 6, 9. Whether a content-neutral provision allowing on-premises signs could pass constitutional muster is not the issue in this case, however. The Act exempts "outdoor advertising solely for activities conducted on the property on which it is located." TEX. TRANSP. CODE §391.031(b)(3); App. J. This exemption is content based because it requires government officials to examine the content of the sign to determine whether it relates to activities taking place on premises.[11] *See McCullen v. Coakley,* 573 U.S. __, 134 S.Ct. 2518, 2531 (2014) ("The Act would be content based if it required 'enforcement authorities' to 'examine the content of the

---

[10] If these content-based provisions are held unconstitutional, the Act's general ban on signs would remain, and the Legislature and TxDOT would have to determine how to re-draw the Act and its regulations in a content-neutral manner. TxDOT could suspend enforcement of the Act's general ban in the interim.

[11] It also requires a government official to examine what activities are actually taking place on-premises, which raises privacy and other concerns.

14

message that is conveyed to determine whether' a violation has occurred." (quoting *FCC v. League of Women Voters*, 468 U.S. 364, 383 (1984)); *Reed*, 135 S.Ct. at 2231 (explaining that sign code "requires Town officials to determine whether a sign is 'designed to influence the outcome of an election' (and thus 'political') or merely 'communicating a message or ideas for noncommercial purposes' (and thus 'ideological'). . . . That obvious content-based inquiry does not evade strict scrutiny review simply because an event (*i.e.*, an election) is involved"); *Barber*, 111 S.W.3d at 109 (Owens, J., dissenting) (stating that the Act "is content based 'by any commonsense understanding of the term' because the content of speech must be examined to determine whether it relates to on-site activities or is otherwise permissible under the Act. Its content determines whether it is permitted or prohibited"); CR66 (citing same).

The Court in *Barber* wrongly assumed the Act's on-premises activities exemption regulated signs based on location, not content. 111 S.W.3d at 101-02; *id.* at 109 (Owens, J., dissenting); *see also* Appellee's Supp. Br. at 10. This cannot be reconciled with *Reed* and *McCullen*, however.[12] TxDOT all but admits that

---

[12] As AusPro has previously noted, the Court in *Barber* correctly recognized that TxDOT's regulations implementing this section in 43 TEX. ADMIN. CODE §21.147(a) were "constitutionally suspect" because they "restrict[ed] 'on-premise' signs to those relating to a *commercial activity* or *business*," thus "run[ning] afoul of the concerns expressed by *Metromedia*'s plurality and concurrence. 111 S.W.3d at 99-100 (emphasis added) (citing *Metromedia*, 453 U.S. 490 (plurality)); App. P. While TxDOT subsequently revised the regulations to delete the word "commercial," they still limit on-site advertising to "business" activities, which are obviously commercial in nature. 43 TEX. ADMIN. CODE §21.147(a); App. P; AusPro Opening Br. at 28;

15

content controls for the on-premises activities exemption when it observes that "[h]ad AusPro's election speech pertained to activities on its premises, its sign would have complied with the Act." Appellee's Supp. Br. at 9. In other words, if AusPro's sign displayed an approved message, it would have been permitted.

Justice Alito's concurrence should not be read as approving a blanket exemption for any regulation distinguishing between signs relating to on-premises and off-premises activities. That would not be consistent with the majority opinion he joined, which held that such distinctions based on the subject matter of signs are content based. 135 S.Ct. at 2227 (explaining that the "commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys").

By contrast, an exemption allowing property owners to put up any sign on their own premises would not be content based and would be consistent with the Supreme Court's previous holdings recognizing property owners' right to display signs on their own property. *See City of Ladue*, 512 U.S. at 56-57 (recognizing the importance of displaying signs from one's residence given the persuasive force of identifying the speaker along with the speech). Moreover, if the State wishes to address visual clutter, it could do so by permitting signs to be displayed by

---

Appellee's Br. at 26-27 & n.10. Thus, §21.147(a) still contains the preference for on-site business and commercial activities that the Texas Supreme Court disapproved of as "constitutionally suspect" in *Barber*.

property owners, but regulating signs leased on another's property. *See Ry. Express Agency, Inc. v. New York*, 336 U.S. 106, 107-08, 109-110 (1949) (upholding regulation of advertising vehicles that exempted advertising by business delivery vehicles engaged in the usual business of the owner but prohibited leased advertising); AusPro Opening Br. at 33-35. Such a rule would permit property owners to display "for sale" or "for lease" signs, election signs, ideological signs, signs promoting their children's sports teams, or any other sign that strikes their fancy, while limiting the proliferation of signs by non-owners who may not have the same incentives as owners to maintain property values. *See City of Ladue*, 512 U.S. at 58 (observing that property owners' "self-interest diminishes the danger of the 'unlimited' proliferation of residential signs"). As the Court explained in *City of Ladue*, "individual residents themselves have strong incentives to keep their own property values up and to prevent 'visual clutter' in their own yards and neighborhoods—incentives markedly different from those of persons who erect signs on others' land, in others' neighborhoods, or on public property." *Id.*; *see also Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 811 (1984) (stating that "[p]rivate property owners' esthetic concerns will keep the posting of signs on their property within reasonable bounds").

17

**F.     The Act Cannot Survive Strict Scrutiny.**

As demonstrated above and in AusPro's opening brief and supplemental brief on *Reed*, because the Act is content based it is subject to strict scrutiny. *See* AusPro Supp. Br. at 11-15; AusPro Opening Br. at 29-44. TxDOT makes no attempt to argue that the Act could survive strict scrutiny. That is because strict scrutiny is usually fatal to a statute. Strict scrutiny is so exacting that hardly any governmental interest has been found to survive. "[I]t is the rare case in which . . . a law survives strict scrutiny." *Burson v. Freeman*, 504 U.S. 191, 211, 198-99 (1992) (plurality) (upholding a restriction on otherwise protected campaign speech within 100 feet of a polling place as justified by the "obviously" compelling governmental interests of protecting citizens' right to vote free from intimidation and "to vote in an election conducted with integrity and reliability").

If a statute is content-based, then the State is required "to show that the regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Boos v. Barry*, 485 U.S. 312, 321 (1988) (citation and internal quotations omitted); *see also United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000) ("If a statute regulates speech based on its content, it must be narrowly tailored to promote a compelling Government interest."). Thus, "[t]o survive strict scrutiny, . . . a State must do more than assert a compelling state interest—it must demonstrate that its law is necessary to serve the asserted

18

interest." *Burson*, 504 U.S. at 199. TxDOT has not shown that the Act is necessary to serve a compelling government interest, or that it is narrowly tailored to further such an interest. *See* AusPro Opening Br. at 42-44. At most, TxDOT notes that the Court in *Reed* assumed *arguendo* that the proffered justifications of aesthetics and traffic safety were compelling before holding that the Gilbert sign code was "hopelessly underinclusive." Appellee's Supp. Br. at 5 (quoting 135 S.Ct. at 2231). The Court did not suggest that a sign regulation's mere incantation of the words "aesthetics and traffic safety" would rise to the level of a compelling government interest.[13] Indeed, TxDOT has only argued that these interests are "substantial," Appellee's Br. at 16, 32, but that is not the standard for a content-based regulation of speech.

Regardless, any sign is capable of having effects on aesthetics and traffic safety. By selectively regulating certain signs based on their content, while allowing other signs to proliferate, the Act and its implementing regulations are "hopelessly underinclusive," like the sign code in *Reed*. 135 S.Ct. at 2231; AusPro Opening Br. at 40-41, 42-49; AusPro Supp. Br. at 6, 11-15. While the Court in *Reed* recognized that "the presence of certain signs may be essential, both for vehicles and pedestrians, to guide traffic or to identify hazards and ensure safety,"

---

[13] It is doubtful that either interest would ever rise to the level of a compelling governmental interest because they are not derived from the Constitution itself or the values underpinning it. *See, e.g.,* AusPro Opening Br. at 42-44 (citing cases).

the Court also cautioned that a sign regulation must be narrowly tailored to promote those interests. 135 S.Ct. at 2232. However, the Court concluded that the sign regulations at issue, including those for "political and ideological signs and signs for events, are far removed from those purposes." *Id.* Instead, "they are facially content based and are neither justified by traditional safety concerns nor narrowly tailored." *Id.* The same is true of the election sign exemption and the other content-based exemptions in the Act and its implementing regulations.[14] The Court should hold that the Act and its regulations fail to satisfy strict scrutiny.

---

[14] Even if TxDOT were able to show that the Act is narrowly tailored to promote a compelling government interest, "[i]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Playboy*, 529 U.S. at 813.

For the above reasons and those stated in its previous briefs, AusPro respectfully requests that this Court reverse the trial court's judgment and render judgment that the Act and its implementing regulations violate the First Amendment of the United States Constitution and Article I, sections 8 and 29 of the Texas Constitution.[15]

Respectfully submitted,

*/s/ Meredith B. Parenti*
Meredith B. Parenti
PARENTI LAW PLLC
7500 San Felipe, Suite 600
Houston, TX 77063
[Tel] (281) 224-5848
[Fax] (281) 605-5677
meredith@parentilaw.com
**Counsel for Appellant**
**AusPro Enterprises, LP**

---

[15] Because TxDOT raises nothing new regarding the Texas Constitution and TxDOT's licensing and permitting scheme, AusPro rests on its prior briefing on those issues.

**CERTIFICATE OF COMPLIANCE**

I certify that this document was produced on a computer using Microsoft® Word for Mac 2011 and contains 4,912 words, as determined by the computer software's word-count function, excluding the sections of the document listed in TEX. R. APP. P. 9.4(i)(1).

*/s/ Meredith B. Parenti*
Meredith B. Parenti

**CERTIFICATE OF SERVICE**

I certify that on October 7, 2015, I served a copy of this filing on the following party via email and through the Court's electronic filing system:

Douglas Geyser
Assistant Solicitor General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
*Counsel for Appellee Texas Department of Transportation*

*/s/ Meredith B. Parenti*
Meredith B. Parenti